2025 IL App (4th) 231457

NO. 4-23-1457

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 27, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| JAMES E. FULLER, | ) | No. 08CF360 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Presiding Justice Harris and Justice Vancil concurred in the judgment and
opinion.

**OPINION**

¶ 1        Following a jury trial, defendant James E. Fuller was convicted of home invasion

and criminal sexual assault. Because of his prior Class X convictions for rape in 1982 and armed

robbery in 1991, he was eligible to be sentenced as a habitual criminal pursuant to section 5-4.5-

95(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-95(a) (West 2010) (hereinafter

subsection (a))). The trial court imposed a life sentence.

¶ 2        Defendant's convictions and sentence were affirmed on direct appeal. *People v.*

*Fuller*, 2013 IL App (3d) 110391, ¶ 31. His initial postconviction petition was denied, and that

denial was affirmed. *People v. Fuller*, No. 3-15-0721 (2017) (unpublished order under Illinois

Supreme Court Rule 23), *appeal denied*, No. 123255 (Ill. May 30, 2018). Defendant was then

allowed to file a successive postconviction petition that was advanced to the second stage but

ultimately denied. Defendant now appeals that denial, arguing that (1) his sentence is improper due to a 2021 amendment to subsection (a) he argues should apply retroactively and (2) he presented sufficient evidence to warrant an evidentiary hearing on his actual innocence claim. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The facts relating to defendant's convictions have been set forth and analyzed in multiple dispositions on appeal. We only discuss the facts necessary to resolve this appeal and borrow from recitations in the previous dispositions.

¶ 5        In March 2008, the State secured an indictment against defendant for the offenses of criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2006); see Pub. Act 96-1551, § 5 (eff. July 1, 2011) (renumbering section 12-13 as 720 ILCS 5/11-1.20)) and home invasion (720 ILCS 5/12-11(a)(6) (West 2006); see Pub. Act 97-1108, § 10-5 (eff. Jan. 1, 2013) (renumbering section 12-11 as 720 ILCS 5/19-6(a)(6))) predicated upon criminal sexual assault. The State also filed notice that it would seek enhanced sentencing of defendant as a habitual criminal pursuant to the predecessor version of subsection (a), section 33B-1(a) of the Criminal Code of 1961 (720 ILCS 5/33B-1(a) (West 2008); see Pub. Act 95-1052, § 93 (eff. July 1, 2009) (renumbering section 33B-1(a) as section 5-4.5-95(a) of the Code (730 ILCS 5/5-4.5-95(a) (West 2010)))). Following defendant's escape from Peoria County jail, recapture, claims of unfitness to stand trial, and repeated disruptive outbursts, the matter proceeded to a jury trial in his absence.

¶ 6        At trial, S.S. testified that a man appeared in her bedroom in the early morning hours of June 3, 2006. It was still dark outside, and it was dark in her bedroom. The man restrained her from behind while she was in bed and told her that he needed to hide from the police. During the encounter, the man digitally penetrated her vagina and placed her hand on his penis over his

- 2 -

pants. When S.S. pulled her hand away, she scratched him. The man eventually left her house without S.S. being able to "get a look" at him. As part of the investigation, police detectives collected fingernail clippings from S.S. A bottle of bleach and a piece of cloth were also found next to the entryway of the home; S.S. did not recall placing either in that location.

¶ 7 Over defendant's objections, the trial court allowed in other-crimes evidence to establish propensity and identity/*modus operandi*. See *People v. Smith*, 2025 IL App (4th) 230866-U, ¶ 68 (noting that identity and *modus operandi* go to the same issue). Two other victims, V.W. and C.S., testified that they endured incidents very similar to the one experienced by S.S. Each woman testified that a man had entered their bedroom in the early morning hours, secured them from behind, told them he needed to hide from police, and sexually assaulted them in a similar manner. Sexual intercourse was forced upon both victims. The assailant then cleaned the women's bodies with bleach. V.W. testified that defendant was wearing white gloves during the encounter, and a white glove was subsequently recovered near her home.

¶ 8 Debra Minton, a forensic scientist with the Illinois State Police specializing in DNA analysis, performed DNA testing in this case. She testified that a male profile recovered from S.S.'s fingernail clippings matched the profile from an oral swab taken from defendant. Minton performed that testing in 2008, though she had previously tested the same fingernail clippings in 2006. At trial, Minton gave no other testimony regarding her 2006 testing. According to Minton's 2006 report—which was not submitted at trial but is part of the record—the DNA profile on the fingernail clippings was compared at that time against DNA extracted from the butts of Marlboro cigarettes defendant had been seen smoking at the time of his arrest. The DNA profile from the cigarette butts could not be excluded from that on the fingernail clippings.

¶ 9        Minton also performed multiple tests on the white glove found in the vicinity of V.W.'s home. A DNA sample from the glove was consistent with defendant's DNA in 11 loci, but too faint to test at 2 loci. Based on the statistics of 9 loci, the DNA profile would be expected to "be seen in 1 in 41 billion black, 1 in 290 billion white or 1 in 470 billion Hispanic unrelated individuals ***." The planetary population at the time of trial was believed to be "[s]ix or six and a half billion." A swab of V.W.'s breast taken as part of a sexual assault kit contained male DNA matching defendant's in nine loci but was too faint to test at the other four. Over defendant's objection, the State also presented evidence of defendant's escape from county jail.

¶ 10        Defendant testified, denying that he entered the home of any of the victims.

¶ 11        The jury found defendant guilty of both counts. The matter proceeded to sentencing, where the trial court found defendant had committed two previous Class X felonies. Defendant conceded he was eligible for sentencing as a habitual criminal. Notable here is that the older of the two prior predicate felonies was a juvenile conviction entered in Kansas in 1982 relating to a crime committed when defendant was 16 years old. The 1982 conviction stemmed from a nine-count charging instrument alleging five counts of aggravated burglary, two counts of rape, and two counts of attempted rape. The two counts of rape are more correctly identified in Illinois as aggravated criminal sexual assault (a Class X felony) given the surrounding circumstances; an offense explicitly excluded from adjudication in juvenile court that would have resulted in defendant being prosecuted as an adult. See 720 ILCS 5/12-14(a)(4) (West 2006); 705 ILCS 405/5-130 (West 2006) ("The definition of delinquent minor under Section 5-120 of this Article shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with *** aggravated criminal sexual assault ***."). The charges alleged that defendant committed several acts of vaginal penetration against multiple women while committing

"aggravated burglaries" in the women's homes between August 25 and September 20, 1981. The court in this case imposed a habitual criminal sentence of natural life imprisonment pursuant to subsection (a).

¶ 12 Following defendant's direct appeal and initial postconviction petition, he ultimately sought and was granted leave to file a successive postconviction petition. Defendant filed an amended petition at the second stage and declined the assistance of appointed counsel, electing to proceed *pro se*. The petition at issue in this appeal argued that a 2021 amendment to the Code that prohibited the use of convictions for offenses committed when a defendant was under the age of 21 was retroactive; therefore, defendant argued, the 1982 rape conviction from an act committed when he was 16 years old could not form the basis for his habitual criminal sentence. Further, defendant argued that documents obtained through a freedom of information request filed in January 2018 established his actual innocence of criminal sexual assault.

¶ 13 The pertinent document obtained through the freedom of information request and referenced in the amended petition is a "conversation report" from the Morton forensic science laboratory. The report notes that the author (apparently Minton) had spoken with Randy Pollard of the Peoria Police Department regarding an investigation into a "series of rapes" that were all perpetrated in a similar manner. Pollard wanted to know when forensic results would be available, and the report noted the matter was given priority to provide prompt analysis. The report referenced samples relating to four victims, corresponding evidence tag numbers, and the evidence submitted for each. A "CSA kit," or sexual assault evidence collection kit, was noted as evidence for every victim except S.S. In the notes, it was documented for S.S. that: "Wrist braces, fingernail clippings[.] Randy said victim wore wrist braces while she slept. She scratched him with the braces

and with her fingers. No sexual assault occurred." The document is dated June 9, 2009; however, both parties seem to agree that the report was made in 2006, as represented in other notations.

¶ 14        The State filed a motion to dismiss, arguing that the 2021 amendment to the Code was substantive and applied only prospectively and that the newly discovered evidence was not sufficiently conclusive to support the claim of actual innocence. Following a hearing on the motion to dismiss, the circuit court agreed with the State and dismissed defendant's petition.

¶ 15        This appeal followed. On appeal, appointed counsel from the Office of the State Appellate Defender filed an opening brief addressing only the retroactive applicability of the 2021 amendment to the Code. Defendant filed correspondence with this court styled in the form of a motion requesting supplemental briefing to raise the actual innocence claim or, in the alternative, to proceed *pro se* and file a new opening brief. This prompted appellate counsel to file a motion to withdraw from the appeal in its entirety, noting that following his review, there were no nonfrivolous arguments that could support defendant's actual innocence claim. In response, this court ordered that the brief on file would stand as defendant's opening brief, and appellate counsel's request to withdraw along with defendant's request to proceed *pro se* were granted. Defendant was directed to file a supplemental brief if he desired to raise additional arguments on appeal; he did so, asserting his actual innocence claim.

¶ 16                        II. ANALYSIS

¶ 17        Defendant claims the circuit court erred in denying his statutory argument and that his petition warranted a third-stage evidentiary hearing because he made a sufficient showing that he was actually innocent. When a trial court dismisses a petition for postconviction relief at the second stage of proceedings, we review that dismissal *de novo*, taking as true all well-pleaded facts that are not positively rebutted by the trial record. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 18         A. Sentencing as a Habitual Criminal Under the Code

¶ 19         First, we address defendant's claim that because one of the predicate felonies used to support his natural life sentence was committed when he was under the age of 21, his due process rights were violated. Defendant cites a relatively recent Illinois Supreme Court decision and other dispositions from the First and Fourth Districts as supporting authority. The State argues that the precedent cited by defendant is distinguishable and that any amendment to the statutory provision under which defendant was sentenced is not retroactive, so it does not affect his sentence.

¶ 20         Defendant was sentenced as a habitual criminal under the version of subsection (a) in force at the time of his sentencing in 2010, which provided as follows:

    "(1) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now (the date of the offense committed after the 2 prior convictions) classified in Illinois as a Class X felony, criminal sexual assault, aggravated kidnapping, or first degree murder, and who is thereafter convicted of a Class X felony, criminal sexual assault, or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.

    (2) The 2 prior convictions need not have been for the same offense.

    (3) Any convictions that result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the purposes of this Section as one conviction.

    (4) This Section does not apply unless each of the following requirements are satisfied:

        (A) The third offense was committed after July 3, 1980.

(B) The third offense was committed within 20 years of the date that judgment was entered on the first conviction; provided, however, that time spent in custody shall not be counted.

(C) The third offense was committed after conviction on the second offense.

(D) The second offense was committed after conviction on the first offense.

(5) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment." 730 ILCS 5/5-4.5-95(a)(1)-(5) (West 2010).

This portion of the statute made no mention of a defendant's age as a limitation for the underlying felonies. Subsection (a) was subsequently amended by Public Act 99-69, § 10 (eff. Jan. 1, 2016) to provide that "Anyone who, having attained the *age of 18* at the time of the third offense, is adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment." (Emphasis added.) 730 ILCS 5/5-4.5-95(a)(5) (West 2016).

¶ 21        As of 2010, subsection 5-4.5-95(b) (730 ILCS 5/5-4.5-95(b) (West 2010) (hereinafter subsection (b))) of the same statute, provided for Class X sentencing of a defendant with qualifying predicate offenses. Subsection (b) provided:

"When a defendant, *over the age of 21 years*, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony and

those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender. (Emphasis added.) *Id.*

¶ 22 Essentially, where a defendant has multiple Class X convictions, subsection (a) characterizes the defendant as a "habitual criminal" and requires a sentence of life imprisonment, if not death. Subsection (b), on the other hand, requires Class X sentencing of a defendant who commits a Class 1 or 2 offense where the defendant has multiple such prior convictions. Both sections contain additional requirements not pertinent here.

¶ 23 In 2021, the legislature amended both subsections (a) and (b). Relevant to subsection (a), the amendment added the requirement that "the first offense was committed when the person was 21 years of age or older" and removed the previously amended language in subsection (a) from the 2016 amendment requiring the defendant to be 18 years of age before application of the provision. Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95 (amending subsection (a)(5) and adding subsection (a)(4)(E)). Subsection (b) was also amended to require "the first offense was committed when the person was 21 years of age or older." *Id.* (adding 730 ILCS 5/5-4.5-95(b)(4)).

¶ 24 It may be helpful to summarize the relevant status of both subsections as they existed at pertinent points in time:

|  | Subsection (a) - Habitual Criminal Sentencing (applied to defendant) | Subsection (b) - Class X Sentencing |
| --- | --- | --- |
| As of 2010 | Two prior Class X convictions—without age prescription or limitation—requires life sentencing as a habitual criminal. | Two prior Class 2 felonies requires a defendant *over the age of 21 years* to be sentenced as Class X offender. |
| Per 2016 Amendment | Restricts application of habitual criminal sentencing to defendants who have attained the age of 18 at the time of the third offense. | No change. |
| Per 2021 Amendment | Now requires that first offense must have been committed when a defendant was 21 years of age or older to be eligible for habitual criminal sentencing. | Now requires that a defendant be 21 years or older at the time of the first offense to enhance felony offenses to Class X sentence. |

¶ 25        Claims of retroactive application followed the 2021 amendment, and in *People v. Stewart*, 2022 IL 126116, the supreme court addressed a split in appellate court decisions about whether the 2021 change to subsection (b)'s Class X sentencing provision was to be applied retroactively. The court framed the issue on appeal as "whether the legislature intended a prior felony conviction to be a qualifying offense for Class X sentencing if the same offense would have resulted in a juvenile adjudication had it been committed on the date of the present offense." *Id.* ¶ 16. The only age specification in the prior version of subsection (b) was that the "defendant" be "over the age of 21," but it was silent as to whether the defendant had to have been a certain age at the time of the predicate offenses. In *Stewart*, the supreme court noted that this allowed for the interpretation that an offense committed as a juvenile may be a predicate for subsection (b)'s Class X sentencing. *Id.* ¶¶ 17-18. Thus, the court concluded that the former version of the statute

was ambiguous. *Id.* Further, the court noted that the subsequent legislative amendment came in the wake of a split in appellate authority on the issue. *Id.* ¶ 21. *Stewart* held that these circumstances negated the usual presumption that any subsequent amendment was a substantive change in the law. *Id.* ¶ 22. Rather, "the split in the appellate court, when considered with the silence in the previous version of the statute on this issue," resulted in the conclusion that the 2021 amendment excluding offenses committed prior to the age of 21 "was intended to resolve the conflict in the appellate court and clarify the meaning of the original statute." *Id.* Because the amendment was deemed a clarification of the law and not a change in it, the offense committed in 2013, when the defendant was 17, could not be used as a predicate felony for Class X sentencing under the Code. *Id.* In sum, the 2021 amendment of subsection (b) was a clarification that had retroactive effect.

¶ 26    As noted, *Stewart* concerned only the Class X sentencing provisions of subsection (b), and it did not address whether the 2021 amendment also applied retroactively to subsection (a)'s provisions for habitual criminal sentencing. In *Stewart*'s wake, the appellate court has struggled to answer the question of whether the 2021 amendment also clarified subsection (a), resulting in a retroactive effect; different conclusions have been reached by different districts. In *People v. O'Neal*, 2023 IL App (4th) 170682-UB, ¶ 22, a panel of this court, responding to a supervisory order denying a petition for leave to appeal and directing the court to consider the impact of *Stewart*, reversed its prior decision that affirmed the imposition of a natural life sentence under subsection (a). The defendant in *O'Neal* had been sentenced in 2017 pursuant to subsection (a) (unlike the defendant in *Stewart*, who was sentenced under subsection (b)). *Id.* ¶ 6. The predicate felony at issue in *O'Neal* was a 1993 armed-robbery conviction when the defendant was 17 years old. *Id.* The defendant argued "that because offenses committed as a juvenile are not

- 11 -

qualifying offenses for subsection (b), they likewise are not qualifying offenses for subsection (a)." *Id.* ¶ 21. The State conceded the argument. The *O'Neal* court accepted the concession and followed the reasoning of *Stewart*'s subsection (b) analysis when applying subsection (a), concluding that the defendant had to be resentenced. *Id.* ¶ 22.

¶ 27 In *People v. Durant*, 2024 IL App (1st) 211190-B, ¶ 2, the First District originally affirmed a habitual criminal life sentence under subsection (a) based on a felony committed when the defendant was 16 years old. As it had done in *O'Neal*, the supreme court issued a supervisory order in *Durant* directing the appellate court to reconsider its disposition in light of *Stewart*. Unlike in *O'Neal*, the State did not concede the issue. Reconsideration of the case led the *Durant* majority to hold that, given *Stewart*'s conclusion that the Class X provisions in subsection (b) were retroactive, the 2021 amendment "must apply to the identically worded amendment to the habitual criminal provision in subsection (a) of the same statute." *Id.* The court reasoned that both statutory provisions were amended simultaneously and involved the insertion of identical language into each. Given such circumstances, it was difficult for the *Durant* majority to conceive that one amendment was intended to be a clarification while the other was not. *Id.* ¶¶ 31-32. The court found any other conclusion would be "incongruous" and "defy common sense" and that "it is reasonable to presume that simultaneous, identical amendments within the same section of the Code were driven by the same legislative intent and purpose." *Id.* ¶ 32.

¶ 28 The *Durant* majority also addressed the fact that there was an intervening change to subsection (a) in 2016 that for the first time included a provision limiting application to defendants who were at least 18 years old as of the time of the *third* offense. The State argued in *Durant* that the change in eligibility from age 18 for the third offense to age 21 for the *first* offense was substantive and could only be applied prospectively. The majority in *Durant* disagreed:

"Under our reading, the legislature originally intended that convictions for crimes under age 21 should not count toward either habitual criminal status under subsection (a) or Class X sentencing under subsection (b). Then, from 2016 until 2021, the legislature made subsection (a) more punitive by grafting the "age of 18" language into the habitual criminal provision. In 2021, Public Act 101-652 restored subsections (a) and (b) to their original intended meaning, explicitly clarifying that only offenses committed after the age of 21 should count toward eligibility for habitual criminal status or Class X sentencing. This reading is consistent with *Stewart* and the legislative history of both provisions." (Emphasis omitted.) *Id.* ¶ 37.

Accord *People v. Brown*, 2024 IL App (1st) 221859-U, *appeal allowed*, No. 130930 (Ill. Nov. 27, 2024) (applying *Durant* and *Stewart* to find that the defendant was improperly sentenced as a habitual criminal under subsection (a)).

¶ 29    Justice Lavin dissented in *Durant*, reasoning that (1) the plain language of subsection (a) in effect at the time the defendant was sentenced was not ambiguous, as there simply was no age limitation; (2) there was not a split of appellate authority on the application of subsection (a) at the time of the 2021 amendment, a factor which drove *Stewart*'s interpretation of subsection (b); (3) the legislative history of the two subsections differed; and (4) even if an ambiguity did exist, the 2021 amendment was substantive and only applied prospectively. *Durant*, 2024 IL App (1st) 211190-B, ¶¶ 56-57 (Lavin, J., dissenting). Therefore, *Stewart*'s reasoning was inapplicable to subsection (a), and the defendant was properly sentenced under the 2005 version of the statute. *Id.* ¶ 59.

¶ 30 The Fifth District in *People v. Smallwood*, 2024 IL App (5th) 210407, ¶ 25, *pet. for leave to appeal pending*, No. 131092 (filed Sept. 27, 2024), disagreed with the reasoning and outcome of *Durant*. In *Smallwood*, the defendant was convicted of attempted first degree murder and was sentenced in 2019 under subsection (a) to life imprisonment with a prior predicate felony conviction occurring in 1983 when he was 19 years old. *Id.* ¶ 15. The defendant appealed the dismissal of his section 2-1401 petition (735 ILCS 5/2-1401 (West 2020)) and argued that in light of *Stewart* and *Durant*, the 2021 amendment applied retroactively to cases on collateral review; thus, he argued, the 1983 conviction when he was 19 could not be used to qualify him for habitual criminal sentencing under subsection (a). *Smallwood*, 2024 IL App (5th) 210407, ¶ 15.

¶ 31 The *Smallwood* court noted the factual differences between the defendant's case and those of *Durant* (defendant sentenced under subsection (a) of statute pre-2016 amendment) and *Stewart* (defendant sentenced under subsection (b)). *Id.* ¶ 25. Beyond *Durant*'s factual inapplicability, the *Smallwood* court agreed with Justice Lavin's dissent that the majority's interpretation in that case rendered the 2016 amendment to subsection (a) "meaningless." *Id.* ¶ 28. *Stewart* also did not apply where the 2016 amendment logically implied "that a defendant could be younger than 18 years of age for the first and second qualifying offenses and still be sentenced to natural life imprisonment under the habitual criminal sentencing statute." *Id.* ¶ 27. Even if the pre-2016 version of subsection (a) was ambiguous, "the logic of *Stewart* still" supported a finding that the 2021 amendment substantively changed subsection (a) because, as required by *Stewart*, when looking to a subsequent amendment to resolve an ambiguity, the 2016 amendment clarified that subsection (a) "always allowed for natural life imprisonment for a defendant who committed qualifying offenses under the age of 18 as long as the defendant was 18 years of age by the third qualifying offense." *Id.* ¶ 29. In dispelling *Durant*'s concerns of incongruity, the court opined that:

"While it may appear to be incongruous to find the same language in the same [Code] as clarification for one subsection and not another subsection, we cannot ignore the clear, unambiguous plain language of [subsection (a)] that allowed for natural life sentencing if a habitual criminal was 18 years of age at the time of the third qualifying offense before Public Act 101-652 was enacted." *Id.*

¶ 32    Assessing the legal landscape on this issue, it is clear that *O'Neal* and *Smallwood* directly conflict. Further, *Smallwood* casts doubt, albeit in what may be *obiter dictum*, on the analysis in *Durant* and *Brown*. Recently, the same issue presented itself to our supreme court, but the court did not address it. See *People v. Gray*, 2024 IL 127815, ¶ 28. However, the issue also appears to be before the supreme court in *Brown*, 2024 IL App (1st) 221859-U, *appeal allowed*, No. 130930 (Ill. Nov. 27, 2024).

¶ 33    In this case, we confront a situation similar to that in *Durant*, where defendant was sentenced pursuant to subsection (a) of the pre-2016 version of the statute that contained no restriction on the age of the individual when considering the predicate felony convictions for imposition of a natural life sentence. We must determine whether defendant is entitled to apply the 2021 amendment retroactively.

¶ 34                                1. *Principles of Retroactive Application*

¶ 35    Ordinarily, retroactive analysis of subsequent amendments is a straightforward task. The analysis is controlled by *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), subsequently adopted in *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27 (2001). The framework provides that we look to the amendment itself to determine whether a temporal reach has been articulated by the legislature. *People v. Hunter*, 2017 IL 121306, ¶ 20. Absent explicit legislative direction on the amendment's intended temporal reach, section 4 of the

Statute on Statutes (5 ILCS 70/4 (West 2016)) requires that only procedural changes apply retroactively, while substantive changes only apply prospectively. *Hunter*, 2017 IL 121306, ¶¶ 21-22. Here, the 2021 amendment articulates no intention that it apply retroactively. Furthermore, there was a substantive change from the 2016 version of the statute, as the 18-year age requirement for the *third* offense was changed to a 21-year age requirement for the *first* offense. Application of the foregoing principles would lead to the conclusion that only a prospective application of the amendment is warranted. Were that all we were to consider, the outcome here is clear: the statute is not retroactive and could not benefit defendant.

¶ 36                             2. *Application of* Stewart

¶ 37          We are cognizant that *Stewart* analyzed the effect of the same 2021 legislation on subsection (b). The fact that *Stewart* did not deal with subsection (a) means that it does not specifically control the outcome here. See *MB Financial Bank, N.A. v. Brophy*, 2023 IL 128252, ¶ 27 (" 'A judicial opinion is a response to the issues before the court *** [and] must be read in the light of the issues that were before the court for determination.' " (quoting *Nix v. Smith*, 32 Ill. 2d 465, 470 (1965))); see also *People v. Palmer*, 104 Ill. 2d 340, 345-46 (1984) ("[T]he precedential scope of a decision is limited to the facts before the court."). The question presented here—whether the 2021 amendment to subsection (a)'s habitual criminal sentencing requirements is to be given retroactive effect—is an issue *Stewart* did not discuss, much less decide.

¶ 38          Still, we would be remiss if we did not examine *Stewart*'s subsection (b) analysis to see whether it helps us decide the similar question presented as to subsection (a). We know, for example, that *Stewart* found it significant that the 2021 legislative amendment came in the midst of an appellate split on the proper interpretation of subsection (b); this was one factor that led the supreme court to conclude that the 2021 legislation was an attempt to clarify the law and resolve

the split. In the context of subsection (a), however, no such split of appellate authority preceded the 2021 amendment, so this aspect of *Stewart*'s analysis is not transferrable to subsection (a).

¶ 39    *Stewart*'s other reason for finding the 2021 amendment of subsection (b) to be a retroactive clarification is that it found an ambiguity in the prior version of the statute. Thus, it found that the 2021 legislation was intended to cure that ambiguity. Again, this rationale simply does not apply to subsection (a) because the language in the version it amended—the version in effect at the time of defendant's sentencing in 2010—had already been wiped from the books when the 2021 amendment came to be. The critical difference between subsection (a) and subsection (b) is that the former was substantially altered by the intervening 2016 amendment, while the latter was untouched by it.

¶ 40    Regardless of whether there was an ambiguity in subsection (a) in 2010 due to its silence on age, the intervening amendment in 2016 added an explicit age provision. The subsequent 2021 amendment only served to substantively change the 2016 version of the statute. Consequently, the legislature cannot have been "clarifying" the 2010 version of the law, as it had ceased to exist five years prior to the 2021 amendment; it was no longer there to be clarified. See *People v. Hicks*, 119 Ill. 2d 29, 34 (1987) ("Absent substantial considerations to the contrary, an amendatory change in the language of a statute creates a presumption that it was intended to change the law as it theretofore existed." (Internal quotation marks omitted.)).

¶ 41    While the court in *Durant* appeared to focus on the wording of the 2021 amendment and its uniform changes to both subsections, we are unable to ignore the differing language and legislative history of the two sections themselves. Accordingly, we find that defendant is not entitled to retroactive application of the 2021 amendment to subsection (a).

¶ 42                                    B. Actual Innocence

¶ 43        Next, we address defendant's claim that the contents of the forensic lab conversation report sufficiently support his contention of actual innocence to warrant an evidentiary hearing.

¶ 44        "To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 47. All well-pled factual allegations in the petition unrebutted by the trial record must be taken as true when ruling on the State's motion to dismiss. *People v. Sanders*, 2016 IL 118123, ¶ 42.

¶ 45        Here, we are unable to conclude that the evidence presented is newly discovered. Newly discovered evidence in this context means evidence that was not available at the defendant's trial and the defendant could not have discovered sooner through the exercise of due diligence. *People v. Green*, 2012 IL App (4th) 101034, ¶ 35. Minton testified at defendant's trial as the State's expert on the DNA evidence, and Pollard's involvement in the investigation was apparent from officer reports. The conversation report is alleged to have been created on June 9, 2006, clearly making it available for defendant's trial. Defendant failed to diligently pursue discovery of the document he now relies on until approximately a decade after his conviction and subsequent to the denial of his initial postconviction petition. See *People v. English*, 403 Ill. App. 3d 121, 133 (2010) (finding the evidence was not newly discovered evidence where the evidence was available at trial and when the initial postconviction petition was filed).

¶ 46        In addition, the conversation report provided by defendant is not of such a conclusive nature to warrant an evidentiary hearing. At trial, the victim testified that her vagina was digitally penetrated by an assailant who broke into her home in the early morning hours. A

bottle of bleach and a cloth were located near the entrance of the victim's residence, and she did not remember placing them there. She scratched the perpetrator, and the DNA located underneath her fingernails matched defendant's. Two other victims testified that similar incidents took place at their homes, where they were sexually assaulted by an assailant who broke into their homes and then wiped them down with bleach. The DNA evidence recovered from a glove at the scene from one of the incidents also matched defendant's DNA.

¶ 47        The DNA evidence in this case overwhelmingly establishes that defendant was the individual who broke into the home of S.S. Her testimony established that defendant digitally penetrated her before fleeing the scene. The other-crimes evidence established that defendant had a method of committing these crimes that was the same across all three victims. Defendant now relies on an internal conversation report that states "no sexual assault" occurred to assert his claim of actual innocence, assuming that the report's recounting of information from some undisclosed source correlates precisely to the elements of the charged offense (*i.e.*, what did the speaker understand "sexual assault" to mean?). At bottom, a forensics lab conversation report is simply a comment on evidence to be tested and without a clear foundation of firsthand knowledge of the underlying facts. This is far from the type of conclusive evidence that could plausibly support a claim of actual innocence.

¶ 48        Accordingly, the circuit court did not err in dismissing defendant's successive postconviction petition.

¶ 49                                III. CONCLUSION

¶ 50        For the reasons stated, the circuit court did not err in dismissing defendant's successive postconviction petition, so we affirm the court's judgment.

¶ 51        Affirmed.

*People v. Fuller*, 2025 IL App (4th) 231457

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 08-CF-360; the Hon. Katherine S. Gorman, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Fuller, of Sumner, appellant *pro se*. |
| **Attorneys for Appellee:** | Jodi M. Hoos, State's Attorney, of Peoria (Patrick Delfino, David J. Robinson, and David E. Mannchen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |