2025 IL App (1st) 240884
No. 1-24-0884
Opinion filed December 5, 2025

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 18676 01 |
| | ) | |
| GLENN ROBINSON, | ) | The Honorable |
| | ) | Pamela J. Stratigakis, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice C.A. Walker in the judgment and opinion.
Justice Gamrath dissented, with opinion.

**OPINION**

¶ 1      When the legislature speaks, the courts listen. Our constitution entrusts the legislature with

defining criminal offenses and setting punishments, respecting the sanctity of the individual and

upholding the rule of law. The legislature has broad authority not only to change the law but also

to clarify it when circumstances warrant correction.

¶ 2      Glenn Robinson contends the legislature has recently clarified that he was never eligible

for a life sentence in prison. After reviewing amendments to the Unified Code of Corrections

(Code) (730 ILCS 5/1-1-1 *et seq.* (West 2022)) as well as supreme court and appellate court

caselaw, we agree. We reverse the summary dismissal of Robinson's postconviction petition, grant his petition on this issue, vacate his natural-life sentence, and remand for resentencing.

¶ 3                                     BACKGROUND

¶ 4       Glenn Robinson petitioned under the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-9 (West 2022)), attacking his sentence as illegally long. He asserted that his natural-life sentence appeared to be mandatory under section 5-4.5-95(a) of the Code (730 ILCS 5/5-4.5-95(a) (West 2014)) because he had been found guilty of a Class X offense for the third time. But he contended that recent amendments to the Code clarified that section 5-4.5-95(a) had never applied to him because he was not yet 21 years old when he committed his first Class X offense.

¶ 5       In support of his argument, Robinson cited a recent supreme court decision, *People v. Stewart*, 2022 IL 126116, which interpreted section 5-4.5-95(b) (730 ILCS 5/5-4.5-95(b) (West 2016)) after amendments to the Code, and a recent appellate court decision, *People v. O'Neal*, 2023 IL App (4th) 170682-UB, interpreting section 5-4.5-95(a) after *Stewart*. He included a document generated by a state agency that listed his date of birth and the dispositions of his prior offenses.

¶ 6       The circuit court summarily dismissed his petition.

¶ 7                                     Jury Trial

¶ 8       We have detailed the facts underlying Robinson's convictions. *People v. Robinson*, 2018 IL App (1st) 153319. Chicago police officers spotted Robinson while he was apparently committing a robbery. He fled, shooting at the officers. A jury found Robinson guilty of multiple counts of attempt first degree murder while personally discharging a firearm and of aggravated discharge of a firearm.

¶ 9    The trial court sentenced Robinson to natural life in prison as a habitual criminal (730 ILCS 5/5-4.5-95(a) (West 2014)), given his two prior Class X convictions for armed robbery. Before imposing the sentence, the trial court described the mandatory imposition of a natural-life sentence as "a disservice to the administration of justice."

> "It really doesn't matter to me what mandatory sentencing structure the legislature comes up with. It's a disservice to the administration of justice that people sitting somewhere else who know nothing about the person or the case come up with mandatory sentencing. The way to—[ensure] competent sentencing is to have judges that know what they're doing."

¶ 10                              Direct Appeal

¶ 11    Robinson raised two contentions on direct appeal. He claimed that a ballistics expert had not laid a sufficient foundation for her expert opinion. And he challenged his sentence as a habitual criminal, arguing that his earlier convictions for armed robbery involved elements that differed from the current armed robbery statute. We affirmed. *Robinson*, 2018 IL App (1st) 153319, ¶ 29.

¶ 12                         Postconviction Proceedings

¶ 13    Years later, Robinson petitioned under the Act, arguing that he did not qualify as a habitual criminal under subsection 5-4.5-95(a) because one of his predicate offenses occurred before he was 21 years old. ("The first predicate conviction for triggering the life sentence, a conviction for Armed Robbery in case #92-CR-5585 (See: EX.#2 TR 00-3) was for an offense when [I] was 18 years old.")

¶ 14    Robinson noted how the legislature recently amended two subsections in the Code on "general recidivism." He cited *Stewart*, where the supreme court held that the amendment to section 5-4.5-95(b) clarified how, to qualify for Class X sentencing, an offender needed to commit

the first, Class 2 offense (of three) after they turn 21 years old. *Stewart*, 2022 IL 126116, ¶ 22. And he cited *O'Neal*, where the appellate court held that the amendment to section 5-4.5-95(a) likewise clarified how, to qualify for a natural-life sentence, an offender needed to commit their first Class X offense after they turn 21. *O'Neal*, 2023 IL App (4th) 170682-UB, ¶¶ 21-22. He concluded that "the imposition of [his natural-life] sentence violates due process [under] *United States v. Shipp*, 589 F.3d 1084, 1091 (10th Cir. 2009) ('Where [defendant] was sentenced beyond the statutory maximum for his offense of conviction, his due process rights were violated')."

¶ 15    The circuit court dismissed his petition as frivolous and patently without merit. The court found the petition lacked an arguable basis in fact because Robinson "offer[ed] no support for this claim other than a copy of a criminal history report displaying August 31 of 1973 as a birth date." The court also found the petition lacked an arguable basis in law because (i) "Robinson argued the same argument [on direct appeal] as he made in his post-conviction petition" so *res judicata* barred it, (ii) *Stewart* did not address "retroactive application" of the amendments to the Code so that decision did not apply, and (iii) serving a natural-life sentence under section 5-4.5-95(a) did not "raise a constitutional issue" for Robinson.

¶ 16    The circuit court denied Robinson's motion to reconsider.

¶ 17                                    ANALYSIS

¶ 18    Robinson contends (i) his natural-life sentence arguably violates due process, given a split within the appellate court on this issue, so we should remand for second-stage proceedings and the appointment of counsel; and (ii) alternatively, the decisions on the side of the split that support his claim were correctly decided, so we should follow them, vacate his sentence, and remand for resentencing. We agree.

¶ 19    Postconviction proceedings have three distinct stages. 725 ILCS 5/122-1 to 122-9 (West 2022). At each stage, the petitioner bears the burden of showing they qualify for relief. *People v. Allen*, 2015 IL 113135, ¶¶ 21-22. We review the dismissal of a petition without an evidentiary hearing *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388 (1998).

¶ 20                                              Arguable Claim

¶ 21    The circuit court dismissed Robinson's petition on three bases: (i) *res judicata* barred his claim because this court decided it on direct appeal, (ii) his claim lacked support because he failed to attach evidence of his date of birth or of his prior convictions, and (iii) his claim lacked an arguable basis in law.

¶ 22                                              *Res Judicata*

¶ 23    *Res judicata* is a common-law doctrine that operates in postconviction proceedings as it does elsewhere. *People v. Blair*, 215 Ill. 2d 427, 443 (2005). Under the doctrine, petitioners generally may not raise claims they litigated once before. See Black's Law Dictionary 1336-37 (8th ed. 2004) (*res judicata* is an "issue that has been definitively settled by judicial decision").

¶ 24    Contrary to the circuit court's finding, Robinson did not litigate this claim during his direct appeal. As we explained in his direct appeal, Robinson argued that his earlier convictions for armed robbery consisted of elements different from the current armed robbery statute. *Robinson*, 2018 IL App (1st) 153319, ¶ 2. But here, Robinson argues that recent amendments to the Code clarified how he was not eligible for a natural-life sentence because he was not yet 21 when he committed a Class X offense the first time.

¶ 25    Like the trial court, the State errs by conflating the remedy Robinson requests (vacating his natural-life sentence) with his underlying claims. Properly understood, Robinson's claims attack

separate subsections that define the separate elements the State must prove when seeking a natural-life sentence. Compare 730 ILCS 5/5-4.5-95(a)(1)-(4) (West 2014) (defining elements), with *id.* § 5-4.5-95(a)(5) (defining sentence). Using the notation of the Code, Robinson's challenge on direct appeal concerned subsection (a)(1), but his challenge in postconviction proceedings concerns subsection (a)(4). See generally *id.* § 5-4.5-95(a)(1), (4).

¶ 26 Moreover, the State misapprehends our prior decision when claiming that we "already determined that [Robinson's] prior offenses, including one in which he committed when he was 18 years old at the time, qualified as predicate offenses." In 2018, we could not have analyzed a claim arising from amendments to the Code that the legislature made in 2021. Robinson's claim is not only new but also presents a legal issue currently pending before the supreme court. *People v. Brown*, 2024 IL App (1st) 221859-U, *appeal allowed*, No. 130930 (Ill. Nov. 27, 2024).

¶ 27 *Res judicata* does not pose a bar. See *Blair*, 215 Ill. 2d at 443 (noting *res judicata* bars claims that have been "definitively settled" (internal quotation marks omitted)).

¶ 28 *Factual Basis*

¶ 29 Robinson's claim depends, in part, on his birthdate and the day he committed a Class X offense the first time. Thus, he needed to support his claim with evidence about those two dates.

¶ 30 "The necessity of attaching 'affidavits, records, or other evidence' to the petition is addressed in section 122-2, which provides that '[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached.' " (Emphasis omitted.) *People v. Collins*, 202 Ill. 2d 59, 66-67 (2002) (quoting 725 ILCS 5/122-2 (West 2000)). The key is that the petitioner must show that their factual allegations are "capable of objective or independent corroboration." *Id.* at 67.

¶ 31    To state the obvious, the presentence investigation prepared for Robinson's sentencing hearing corroborates the factual allegations in his petition. Moreover, contrary to the circuit court's finding, Robinson cleared this hurdle once more by appending to his petition a "criminal history report" generated by a state agency. See *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 12 n.3 (courts may take judicial notice of public documents like records from Department of Corrections). According to the document, Robinson was born on August 31, 1973, and his first offense was prosecuted in case No. 92-CR-05585-02. That is, the document identifies Robinson's date of birth, indicating that he was less than 21 when convicted of his first offense.

¶ 32    Thus, the circuit court was capable of corroborating Robinson's modest factual assertions. See 725 ILCS 5/122-2 (West 2022); *People v. Alvarez-Garcia*, 395 Ill. App. 3d 719, 726-27 (2009) (courts may take judicial notice of "matters that are readily verifiable from sources of indisputable accuracy" such as public documents kept by Illinois courts).

¶ 33                                   *Arguable Basis in Law*

¶ 34    Robinson contends the decisions in *Stewart* and *Durant* provide an arguable basis for his petition to advance to second-stage proceedings. See *Stewart*, 2022 IL 126116, ¶ 22 (finding Class X sentence improperly premised on predicate offense committed when defendant was less than 21 years); *People v. Durant*, 2024 IL App (1st) 211190-B, ¶ 37 (finding natural-life sentence improperly premised on predicate offense committed when defendant was less than 21 years). We agree.

¶ 35    The first stage of postconviction proceedings is "extremely undemanding." *People v. Chambers*, 2021 IL App (4th) 190151, ¶ 81. All we require of petitioners is that they raise arguable claims. *People v. Hodges*, 234 Ill. 2d 1, 16-17 (2009). That excludes claims that are "completely

contradicted by the record." *Id.* at 16. But that includes claims with "a foothold" in caselaw. *Chambers*, 2021 IL App (4th) 190151, ¶ 81.

¶ 36    Contrary to the trial court's finding, Robinson's claim found a foothold in caselaw interpreting recent amendments to the Code.

¶ 37    In 2021, the legislature amended section 5-4.5-95 to state that both subsection (a) and subsection (b) do not apply unless the "first offense was committed when the person was 21 years of age or older." Pub. Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a), (b)).

¶ 38    In 2022, the supreme court in *Stewart* held this amendment "clarif[ied] the meaning of the original statute," particularly subsection (b). *Stewart*, 2022 IL 126116, ¶ 22.

¶ 39    In 2023, this court in *Durant* observed how the amendment to subsection (b) was identical to the amendment in subsection (a) and held it likewise clarified the original meaning of subsection (a) and thus applied retroactively. *Durant*, 2024 IL App (1st) 211190-B, ¶¶ 37-38; see *O'Neal*, 2023 IL App (4th) 170682-UB, ¶¶ 22-24 (vacating natural-life sentence after *Stewart*). Robinson's claim thus has an arguable basis in law.

¶ 40    Like the circuit court, the State resists that conclusion by pointing to a handful of decisions. See, *e.g.*, *People v. Smallwood*, 2024 IL App (5th) 210407, ¶ 28 (disagreeing with *Durant*); *People v. Fuller*, 2025 IL App (4th) 231457, ¶ 41 (same). But without more, contrary decisions from the appellate court do not convert Robinson's claim into an "inarguable" one. *Chambers*, 2021 IL App (4th) 190151, ¶ 81 ("[T]o call the *pro se* petition in this case not arguable, we would have to call some decisions by the appellate court *** not arguable—which, of course, would be untenable.").

¶ 41    Moreover, the State's citation to the supreme court's recent decision in *Wallace* fails. *People v. Wallace*, 2025 IL 130173. There, the supreme court analyzed the legislative history of a

separate statute concerning armed habitual criminals, which the legislature has never amended to "include a minimum age for qualifying offenses." Compare *id.* ¶ 23 (interpreting 720 ILCS 5/24-1.7(a) (West 2018)), with *Stewart*, 2022 IL 126116, ¶ 22 (interpreting 730 ILCS 5/5-4.5-95(b) (West 2016)). Because *Wallace* addresses the legislative history of a separate statute, it provides no basis for undermining Robinson's claim. See *Wallace*, 2025 IL 130173, ¶ 23 (describing *Stewart* as "distinguishable").

¶ 42    Finally, the trial court erred by finding Robinson's claim did not present a constitutional issue. Robinson was under the age of 21 when he committed a Class X offense the first time. *Durant*'s holding means that no statute authorized his sentence of natural life in prison. *Durant*, 2024 IL App (1st) 211190-B, ¶ 41. Thus, given this arguable basis in law, the sentence Robinson received was illegally long and violated his right to due process. *United States v. Shipp*, 589 F.3d 1084, 1091 (10th Cir. 2009) (where defendant "was sentenced beyond the statutory maximum for his offense of conviction, his due process rights were violated").

¶ 43                                 Natural-Life Sentence

¶ 44    For years, our courts labored under the mistaken idea that the general recidivism statute, one of the harshest of our sentencing statutes, contained no age limit for first offenses. But as our supreme court observed in *Stewart*, and as this court observed in *Durant*, the legislature finally clarified that only offenses committed after a person turns 21 trigger the sentencing schemes in section 5-4.5-95. *Stewart*, 2022 IL 126116, ¶ 22; *Durant*, 2024 IL App (1st) 211190-B, ¶ 37.

¶ 45    Robinson received a natural-life sentence because the trial court found his 1992 conviction to be the third time he was convicted of a Class X offense. In law as in life, "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union*

*Planters National Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting).

Because the legislature has now clarified that Robinson was never eligible for a life sentence under subsection 5-4.5-95(b), we reverse.

¶ 46                                    *General Recidivism Statute*

¶ 47    At the time of Robinson's sentencing in 2015, subsection (a) of the general recidivism statute read:

> "(a) HABITUAL CRIMINALS.
>
> (1) Every person who has been twice convicted in any state *** court of an offense that contains the same elements as an offense now *** classified in Illinois as a Class X felony *** shall be adjudged an habitual criminal.
>
> * * *
>
> (4) This Section does not apply unless each of the following requirements are satisfied:
>
> (A) The third offense was committed after July 3, 1980.
>
> (B) The third offense was committed within 20 years of the date that judgment was entered on the first conviction; provided, however, that time spent in custody shall not be counted.
>
> (C) The third offense was committed after conviction on the second offense.
>
> (D) The second offense was committed after conviction on the first offense." 730 ILCS 5/5-4.5-95(a) (West 2014).

The legislature amended subsection (a) in 2016 through Public Act 99-69, § 10 (eff. Jan. 1, 2016) to provide that "Anyone who, having attained the age of 18 at the time of the third offense, is adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment." 730 ILCS 5/5-4.5-95(a)(5) (West 2016).

¶ 48    The legislature paralleled the structure of subsection (a) when writing subsection (b), which requires a Class X sentence for defendants convicted of a third Class 2 or greater felony. At the time of Robinson's sentencing, subsection (b) read:

"(b) When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender. This subsection does not apply unless:

(1) the first felony was committed after February 1, 1978 (the effective date of Public Act 80-1099);

(2) the second felony was committed after conviction on the first; and

(3) the third felony was committed after conviction on the second." 730 ILCS 5/5-4.5-95(b) (West 2014).

¶ 49    The legislature amended both parts, subsection (a) and subsection (b), in 2021 through Public Act 101-652 (eff. July 1, 2021). Using identical language, the legislation directed that both subsections apply only if "[t]he first offense was committed when the person was 21 years of age or older." 730 ILCS 5/5-4.5-95(a)(4)(E), (b)(4) (West 2022).

¶ 50                                    *People v. Stewart*

¶ 51    In *Stewart*, the supreme court held the 2021 amendment did not *change* the meaning of subsection (b) of the general recidivism statute but *clarified* what its meaning had always been.

- 11 -

*Stewart*, 2022 IL 126116, ¶¶ 20, 22; see *Fuller*, 2025 IL App (4th) 231457, ¶ 25 (noting under *Stewart* "the 2021 amendment of subsection (b) was a clarification that had retroactive effect").

¶ 52      As here, the issue before the supreme court was whether a pre-amendment conviction was a qualifying offense. See *Stewart*, 2022 IL 126116, ¶ 16 ("whether the legislature intended a prior felony conviction to be a qualifying offense for Class X sentencing if the same offense would have resulted in a juvenile adjudication had it been committed on the date of the present offense"). The statute was silent regarding the age at which one had to be when committing the first qualifying offense. See *id.* ¶¶ 17-18 ("This court has recognized that a statute's silence on a particular question is akin to an ambiguity in that it allows this court to look to extrinsic aids of construction to resolve the question.").

¶ 53      Given this silence, the supreme court "consider[ed] the circumstances surrounding the amendment to determine whether the legislature intended merely to interpret or clarify the original act." *Id.* ¶ 20. Three circumstances "may indicate a legislative intent to clarify rather than make a substantive change in the law," such as, whether (i) the enacting body declared that it was clarifying an earlier enactment, (ii) a conflict or ambiguity existed before the amendment, and (iii) the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history. *Id.* (citing *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 298 (2010)).

¶ 54      The supreme court analyzed the second circumstance, noting a split in caselaw on whether the legislature intended a prior conviction to trigger Class X sentencing "if the same offense would have resulted in a juvenile adjudication" under current law, pointing out that the statute was silent on this question. *Id.* ¶¶ 16-17. The court resolved the split by focusing on the legislature's 2021 decision to amend the statute "to provide that the first qualifying offense for Class X sentencing

must have been committed when the person was 21 years of age or older." (Internal quotation marks omitted.) *Id.* ¶ 19. The split and the statute's silence led the court "to conclude that Public Act 101-652 was intended to resolve the conflict in the appellate court and clarify the meaning of the original statute." *Id.* ¶ 22. Thus, a "2013 conviction for an offense committed when he was 17 years old was not a qualifying offense for Class X sentencing under the previous version of subsection 5-4.5-95(b) of the Code." *Id.*

¶ 55                                    *Stewart Controls*

¶ 56    As discussed, the supreme court in *Stewart* recognized three circumstances where the legislature intends an amendment to a statute to clarify the law. Each circumstance leads us to conclude that, like the 2021 amendment to subsection (b), the 2021 amendment to subsection (a) clarified the original meaning.

¶ 57    First, *Stewart* determined that the legislature clarified, rather than changed, the general recidivism statute. *Id.* ("The existence of these conflicting appellate court decisions negates the presumption that the legislature intended to change existing law when it amended the statute to require that qualifying offenses must have been committed when the person was 21 years of age or older."). Moreover, the amendments to subsection (a) and subsection (b) are identical. Pub. Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a)(4)(E), (b)(4)). Where a phrase appears in different parts of the same statute, we presume that phrase has the same meaning throughout the statute, unless a contrary legislative intent is "clearly expressed." *People v. Ashley*, 2020 IL 123989, ¶ 36. Thus, the legislature's use of identical language to amend parallel provisions leads to one conclusion: the legislature intended courts to treat the identical amendments in the same way.

- 13 -

¶ 58    Second, the clarification occurred after the appellate court had questioned the prevailing interpretations of both subsection (a) and subsection (b). The supreme court in *Stewart* recognized that an amendment should be treated as a clarification when the legislature amends a statute in response to a split within the appellate court regarding an issue of statutory interpretation. *Stewart*, 2022 IL 126116, ¶ 21-22. The split in *Stewart* arose within the appellate over subsection (b). See *id.* ¶ 17 (discussing "split" including *People v. Miles*, 2020 IL App (1st) 180736, ¶ 11, *People v. Reed*, 2020 IL App (4th) 180533, ¶ 25, and others).

¶ 59    But a review of those cases shows the appellate court also called into question caselaw interpreting subsection (a) thus creating an "ambiguity" in need of clarification. (Internal quotation marks omitted.) *Id.* ¶ 20. For example, when deciding whether a prior juvenile adjudication would qualify a person for sentencing under subsection (b), this court in *Miles* discussed cases where defendants were sentenced under subsection (a). *Miles*, 2020 IL App (1st) 180736, ¶ 22. We noted how older caselaw, *Bryant* and *Banks*, was decided without the help of a then-recent amendment to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2016)). *Miles*, 2020 IL App (1st) 180736, ¶¶ 21-22 (discussing *People v. Bryant*, 278 Ill. App. 3d 578 (1996) and *People v. Banks*, 212 Ill. App. 3d 105 (1991)). We suggested that if the defendants in *Bryant* and *Banks* had been convicted after that amendment, the outcomes in those cases would have been different. *Id.* ¶¶ 18-22 (assessing State contention that under subsection (a) "any conviction may be used as a former conviction, and that no exception is made for convictions obtained while the defendant was a juvenile").

¶ 60    After cases like *Miles*, the legislature amended both subsection (a) and subsection (b) of the general recidivism statute. As in *Stewart*, this timing thus supports the inference that the

legislature clarified the ambiguity over subsection (a), as it did with conflict over subsection (b). See *Fuller*, 2025 IL App (4th) 231457, ¶ 25 ("the 2021 amendment of subsection (b) was a clarification that had retroactive effect").

¶ 61 Third and finally, viewing the amendment to subsection (a) as a clarification is consistent with a reasonable interpretation of its legislative history. To be sure, as mentioned, the legislature amended subsection (a) in 2016 but did not amend subsection (b). That amendment, however, did not happen in isolation; it was one of many arising from the legislature's attempt to align our sentencing law with federal decisions on juvenile sentencing.

¶ 62 The legislature passed Public Act 99-69 to make Illinois law comply with the holdings of *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. 460 (2012). Pub. Act 99-69 (eff. Jan. 1, 2016). The United States Supreme Court had prohibited natural-life sentences for non-homicide offenses by those under 18 years old. So the legislature added a recurring phrase to many statutes to signal the federal constitutional significance of that age. For instance, subsection (a) now reads: "Anyone who, having *attained the age of 18* at the time of the third offense, is adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment." (Emphasis added.) 730 ILCS 5/5-4.5-95(a)(5) (West 2016).

¶ 63 Looking across the Criminal Code of 2012 and the Code, the legislature likewise identified sections where a natural life sentence for a nonhomicide offense was possible and added a provision limiting it to those over 18: (1) aggravated kidnapping (720 ILCS 5/10-2 (West 2016) (limiting mandatory life for repeat offenders to those who have "attained the age of 18 years at the time of the commission of the offense")), (2) criminal sexual assault (*id.* § 11-1.20 (limiting mandatory life for repeat offenders to those who have "attained the age of 18 years at the time of

- 15 -

the commission of the offense")), (3) aggravated criminal sexual assault (*id.* § 11-1.30 (same language)), (4) predatory criminal sexual assault of a child (*id.* §11-1.40 (same language, in two different aggravated sentencing provisions)), (5) ritualized abuse of a child (*id.* § 12-33 (using same language to limit discretionary life sentence)), (6) terrorism (*id.* § 29D-14.9 (limiting mandatory life required in some circumstances to those who have "attained the age of 18 years at the time of the commission of the offense")), (7) hindering prosecution of terrorism (*id.* § 29D-35), and (8) habitual criminal statute (730 ILCS 5/5-4.5-95 (West 2016) ("attained the age of 18 at the time of the third offense")).

¶ 64    The upshot is these amendments support the reasonable inference (*Stewart*, 2022 IL 126116, ¶ 20) that the legislature enacted a comprehensive scheme to comply with *Miller* and *Graham* but did not further intend to change the age limit for the first offense under subsection (a). Indeed, unlike the 2021 amendment, the 2016 amendment to subsection (a) was silent as to the age of the first qualifying offense. Compare 730 ILCS 5/5-4.5-95(a)(5) (West 2016), with Pub. Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a)(4)(E)).

¶ 65                    *O'Neal, Durant, and Brown Apply Stewart*

¶ 66    Not missing a beat, the appellate court quickly applied the legislature's clarification to subsection (a). On remand after *Stewart*, the appellate court in *O'Neal* accepted the State's concession that *Stewart* applied equally to subsection (a) and vacated the defendant's life sentence. *O'Neal*, 2023 IL App (4th) 170682-UB, ¶¶ 21-22, 24. About a month later, the supreme court vacated our decision affirming a life sentence in *Durant* and remanded with instructions to reconsider after *Stewart*. *People v. Durant*, No. 129184 (Ill. Mar. 29, 2023) (supervisory order).

¶ 67    In *Durant*, we recognized *Stewart* as holding that the 2021 amendment to subsection (b) "clarif[ied] existing law, such that its minimum age requirement applied even to a person who was sentenced as a Class X offender before the 2021 amendment." *Durant*, 2024 IL App (1st) 211190-B, ¶ 34 (citing *Stewart*, 2022 IL 126116, ¶¶ 22-23). We observed how the 2021 amendment to subsection (a) was part of the same public act that added identical language to a parallel provision, subsection (b). *Id.* ¶ 32.

¶ 68    We reasoned that these amendments were "properly viewed as the legislature's restoration of the original intended meaning for both subsection (a) and (b)—that convictions under age 21 should not be used as predicate offenses." (*per curiam*). *Id.* ¶ 30. "Indeed, it would be incongruous and defy common sense to find the legislature did not act with similar intent when it added identical provisions at the very same time in the same public act." *Id.* ¶ 32. We found that *Stewart* had "effectively narrow[ed] the scope of a criminal statute by interpreting its terms, such that it constitutes a substantive rule that applies retroactively to cases on collateral review." (Internal quotation marks omitted.) *Id.* ¶ 40.

¶ 69    Lastly, in *Brown*, we applied *Stewart* and *Durant* to conclude that a defendant had improperly received a natural-life sentence under subsection (a). *Brown*, 2024 IL App (1st) 221859-U.

¶ 70                    *Smallwood and Fuller Misapply Stewart*

¶ 71    Two appellate court decisions have criticized *Durant* and declined to apply *Stewart*. But those decisions fail to persuade.

¶ 72    Both contain a mistaken premise: that *Stewart* found an "ambiguity" in subsection (b). *Fuller*, 2025 IL App (4th) 231457, ¶ 39; *Smallwood*, 2024 IL App (5th) 210407, ¶ 25. On the

contrary, *Stewart* found subsection (b) to be "silent" on what age one had to be when committing the first qualifying offense under subsection (b), which was "akin to an ambiguity." *Stewart*, 2022 IL 126116, ¶¶ 17-18. And in *Stewart*, as here, the statute was silent on the age requirement for committing the first qualifying offense. See 730 ILCS 5/5-4.5-95 (West 2016).

¶ 73 Moreover, contrary to *Fuller* and *Smallwood*, the 2016 amendment did not speak to what age one had to be when committing the first qualifying offense under subsection (a). *Fuller*, 2025 IL App (4th) 231457, ¶ 40; *Smallwood*, 2024 IL App (5th) 210407, ¶ 27. The legislature spoke only about the third offense. 730 ILCS 5/5-4.5-95(a)(5) (West 2016) ("Anyone who, having attained the age of 18 at the time of the third offense, is adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment."). As we explained, that amendment and the many others appearing across the Code and the Criminal Code of 2012 at that time clarified only that sentencing law would conform with federal constitutional constraints. Indeed, the 2016 amendment left alone subsection (b) because the maximum sentence one can receive for a Class X sentence (30 years) does not implicate *Graham* and *Miller*, which concern natural-life sentences.

¶ 74 We reject the assertion, "Where a defendant need only be 18 years of age by the third offense, it logically follows that a defendant could be younger than 18 years of age for the first and second qualifying offenses and still be sentenced to natural life imprisonment under the habitual criminal sentencing statute." *Smallwood*, 2024 IL App (5th) 210407, ¶ 27. The legislature could not have intended an absurd system where only those over 21 at the time of the first qualifying conviction face mandatory Class X sentences but conduct when far younger can trigger a mandatory natural-life sentence. See *People v. Williams*, 2016 IL 118375, ¶ 15 (courts presume legislature did not intend to create absurd, inconvenient, or unjust results).

¶ 75    The legislature could not have intended that the addition of identical language sought to clarify one subsection but amend another. By failing to follow the rule that similar statutory language generally expresses a similar intent (*Ashley*, 2020 IL 123989, ¶ 36), these decisions collapse. As we explained, the legislature's amendment in 2016 was part of a catch-all response to developing caselaw in federal court, not a substantive amendment to half (and only half) of the general recidivism statute.

¶ 76    Finally, for the reasons we gave, we reject the assertion, "[N]o *** split of appellate authority preceded the 2021 amendment ***." *Fuller*, 2025 IL App (4th) 231457, ¶ 38. The appellate court had questioned prevailing interpretations of subsection (a) thus creating an ambiguity in need of clarification. See *Miles*, 2020 IL App (1st) 180736, ¶ 22; *Stewart*, 2022 IL 126116, ¶ 20 (citing *Middleton v. City of Chicago*, 578 F.3d 655, 663-64 (7th Cir. 2009)).

¶ 77    For these reasons, *Fuller* and *Smallwood* fail to persuade and misapply *Stewart*.

¶ 78                                Regarding the Dissent

¶ 79    The dissent identifies differences in wording across years but fails to identify a meaningful difference in legislative intent. The 2021 amendments used the same language to address the same problem in both subsections. Under *Stewart*, this classifies the amendment as a clarifying amendment.

¶ 80    The dissent's sharp distinction between subsections 5-4.5-95(a) and (b) does not withstand close reading. While *Stewart* may have arisen under subsection (b), it interpreted the same 2021 amendment that the legislature inserted simultaneously into both subsections. The dissent offers no compelling reason why identical language, enacted in the same act and placed in parallel provisions, should be understood as a clarification in one subsection but as a substantive overhaul

in the other. When the legislature uses the exact words in the same statute at the same time, the most reasonable inference is that it intends the same meaning.

¶ 81    Nor do *Smallwood* and *Fuller* alter this conclusion. Neither case identifies legislative history or statutory text indicating that subsection (a) was intended to operate differently from subsection (b) concerning the age-21 requirement. They merely express disagreement with *Durant* and extend that disagreement to *Stewart*. That is not statutory interpretation; it is preference. *Stewart* provides the controlling framework where the legislature responds to a long-standing judicial interpretation by adding clarifying language that coherently resolves the confusion. Therefore, the amendment is a clarification that applies retroactively.

¶ 82    Contrary to the dissent's reliance on the 2016 amendment to subsection (a), that change— requiring the defendant to be 18 at the time of the third offense—served an entirely different purpose. It aligned the habitual-criminal statute with *Miller* and *Graham* regarding mandatory life sentences imposed on juveniles. It did not address which offenses qualify as predicates. The 2021 amendment rectified this by inserting the identical age-21 requirement in both subsections, demonstrating that juvenile and emerging-adult convictions were never meant to serve as qualifying predicates for either Class X sentencing or habitual-criminal sentencing. Conflating the 2016 and 2021 amendments into a single age policy overlooks their distinct legislative purposes and structural roles.

¶ 83    Moreover, the view that subsection (a) contained no ambiguity before 2021 cannot be reconciled with the fact that subsection (b) suffered from the same interpretive problem, namely, whether youth convictions can serve as predicates, until the legislature intervened. Subsections (a) and (b) track each other structurally. They both authorize severe recidivist penalties, both tie those

penalties to the nature and timing of earlier convictions, and both were amended by the same act using identical wording. If subsection (b) required clarification, it is difficult to understand why subsection (a), which governs an even harsher sentencing consequence, did not.

¶ 84    Finally, the dissent's argument that the 2021 amendment "changed" the law by removing the age-18 requirement ignores how *Stewart* instructs courts to interpret amendments. A clarification may alter statutory phrasing when the original text fails to express the legislature's intent. What matters is whether the revised language aligns with a reasonable interpretation of the original statute. Here, as *Durant* explained, the clarified text restores the statute to its intended scope: a habitual-criminal life sentence cannot rest on conduct occurring before the age of 21. Nothing in the pre-2021 legislative history suggests that the General Assembly intended to expose juveniles or near-juveniles to mandatory natural life sentences.

¶ 85                                    Remedy

¶ 86    No disputed issues of fact remain. A jury found Robinson guilty of multiple counts of attempted murder and aggravated discharge of a firearm, Class X felonies. 720 ILCS 5/8-4(a), (c)(1), 24-1.2(a)(3), (b) (West 2012). The trial court sentenced him to natural life in prison, due to two prior Class X offenses, armed robberies in 1992 and 1996. 730 ILCS 5/5-4.5-95(a) (West 2014).

¶ 87    According to the presentence investigation, Robinson was born on August 31, 1973. See Internet Inmate Status, Ill. Dep't of Corr., https://www.idoc.state.il.us/subsections/search/inms_print.asp?idoc=B38025 (last visited Nov. 27, 2025) [https://perma.cc/3D9A-BMU7]; *People v. Williams*, 328 Ill. App. 3d 879, 887 (2002) (courts may take judicial notice of the official public records of the Department of Corrections).

Thus, Robinson was less than 21 years old during the first armed robbery in No. 92-CR-05585-02. *Alvarez-Garcia*, 395 Ill. App. 3d at 726-27 (appellate court may take judicial notice of "matters that are readily verifiable from sources of indisputable accuracy" such as public documents kept by Illinois courts).

¶ 88    Given these undisputed facts and consistent with *Stewart* and *Durant*, we reverse the summary dismissal of Robinson's petition, grant his petition on this issue, vacate his natural-life sentence, and remand for resentencing. See *People v. Buffer*, 2019 IL 122327, ¶¶ 46-47 (vacating unconstitutional sentence where "the record before us does not require factual development" and "[a]ll of the facts and circumstances to decide defendant's claim are already in the record").

¶ 89    Reversed in part and vacated in part; cause remanded.

¶ 90    JUSTICE GAMRATH, dissenting:

¶ 91    I respectfully dissent. I do not find *People v. Stewart*, 2022 IL 126116, controlling because it deals exclusively with section 5-4.5-95(b), not section 5-4.5-95(a) (730 ILCS 5/5-4.5-95(a), (b) (West 2016)). I also believe the amendment to section 5-4.5-95(a) was a substantive change, not a clarification. See *People v. Smallwood*, 2024 IL App (5th) 210407; *People v. Fuller*, 2025 IL App (4th) 231457; *People v. Durant*, 2024 IL App (1st) 211190-B, ¶¶ 55-60 (Lavin, J., dissenting).

¶ 92    Although section 5-4.5-95(a) and section 5-4.5-95(b) are part of the same statute, they are markedly different and do not share the same legislative history. Unlike section 5-4.5-95(b), which always had age 21 as a requirement, section 5-4.5-95(a) originally had no age requirement. In 2016, the legislature amended section 5-4.5-95(a), but not section 5-4.5-95(b), to add an age requirement of 18 at the time of the third offense. In 2021, the legislature amended both subsections to make them apply only if "[t]he first offense was committed when the person was 21 years of

age or older." Pub. Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a)(4)(E), (b)(4)). For this to make sense, the legislature had to amend, and did amend, section 5-4.5-95(a) by deleting the age requirement of 18, resulting in a substantive change.

¶ 93    Unlike section 5-4.5-95(b), the amendment to section 5-4.5-95(a) has none of the three hallmarks of a clarification. See *Stewart*, 2022 IL 126116, ¶ 20 (setting forth three factors that indicate a legislative intent to clarify rather than make a substantive change in the law).

¶ 94    First, in amending section 5-4.5-95(a), the legislature did not provide a declaration indicating it intended to clarify an existing law. *Cf.*, *e.g.*, 735 ILCS 5/12-112 (West 1998) ("This amendatory Act of 1997 (P.A. 90-514) is intended as a clarification of existing law and not as a new enactment."); 735 ILCS 5/12-903 (West 2002) ("This amendatory Act of the 92nd General Assembly is intended as a clarification of existing law and not as a new enactment."); 735 ILCS 5/9-111 (West 2002) (same). In fact, it changed the law by deleting the minimum age of 18 in section 5-4.5-95(a). No change was made to section 5-4.5-95(b) because the age was always 21.

¶ 95    Second, prior to the 2021 amendment, there was no conflict or ambiguity as to the meaning of section 5-4.5-95(a), unlike section 5-4.5-95(b). Section 5-4.5-95(a) was interpreted consistently as written, with no minimum age requirement or exception for juvenile offenders. See *People v. Bryant*, 278 Ill. App. 3d 578, 586 (1996); *People v. Banks*, 212 Ill. App. 3d 105, 107 (1991); *People v. Buchanan*, 2024 IL App (1st) 221579-U, ¶ 31.

¶ 96    Originally, under section 5-4.5-95(a), every person, no matter their age, was classified as a habitual criminal if convicted of three Class X felonies. After the 2016 amendment, they had to be at least 18 at the time of the third offense to be classified as a habitual criminal. In 2021, the legislature upped the age, making it so no one could be classified as a habitual criminal unless they

were 21 at the time of the first offense. This is now consistent with section 5-4.5-95(b), but it is a substantial change from what the law was, and what it was uniformly understood to be.

¶ 97    To identify a purported ambiguity in the meaning of section 5-4.5-95(a), the majority cites *People v. Miles*, 2020 IL App (1st) 180736. In *Miles*, a section 5-4.5-95(b) case, the court introduced a hypothetical about how a 2016 amendment to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2016)) might have affected the decisions in *Bryant* and *Banks* had it been in effect at the time of defendants' sentencing. In the instant case, the Juvenile Court Act does not affect Robinson at all because he was 18 at the time of his first offense. I fail to see how this help shapes the majority's view when no court, including *Miles*, has ever found an ambiguity in section 5-4.5-95(a), disagreed about its meaning, or departed from its plain language. See *Banks*, 212 Ill. App. 3d at 107; *Bryant*, 278 Ill. App. 3d at 586 (citing *Banks*); *Buchanan*, 2024 IL App (1st) 221579-U, ¶ 31; *cf. Stewart*, 2022 IL 126116, ¶ 17 (identifying split of authority over subsection 5-4.5-95(b)).

¶ 98    This leads to the third factor of the *Stewart* analysis, whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history. It is not.

¶ 99    Without belaboring this point, 2016 was the first time the legislature required a court to consider the defendant's age in habitual criminal sentencing under section 5-4.5-95(a). See Pub. Act 99-69 (eff. Jan. 1, 2016). This was a meaningful change. Before then, every person could be sentenced as a habitual criminal if they committed three Class X felonies regardless of their age. After the 2016 amendment, a predicate offense could still be committed at any age, so long as the defendant attained age 18 at the time of the third offense. For someone to have committed a third Class X offense at age 18, they would have had to be under 18 at the time of the two earlier

convictions. The 2021 amendment changed the law substantively by deleting the age requirement of 18 for the third offense and increasing the age to 21 for the first offense. This was a deliberate change, not a clarification, and cannot be reconciled with the prior law and legislative history of section 5-4.5-95(a).

¶ 100   The record shows Robinson committed his first Class X felony at age 18 in 1992, his second in 1999, and his third in 2012, when there was no age requirement for predicate offenses or sentencing. Because I believe the 2021 amendment to section 5-4.5-95(a) was meant to change the law, not simply clarify it, I respectfully dissent from the majority's decision to vacate Robinson's natural-life sentence.

*People v. Robinson*, 2025 IL App (1st) 240884

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 12-CR-18676(01); the Hon. Pamela J. Stratigakis, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Rebecca I. Levy, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Erin K. Slattery, and Kimberly C. Reeve, Assistant State's Attorneys, of counsel), for the People. |