**2026 IL 130930**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 130930)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
CORWYN BROWN, Appellee.

*Opinion filed January 28, 2026.*

CHIEF JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Justices Theis, Holder White, Cunningham, and Rochford concurred in the judgment and opinion.

Justice Overstreet specially concurred, with opinion, joined by Justice O'Brien.

## OPINION

¶ 1      In 1995, defendant, Corwyn Brown, received a mandatory natural life sentence after he committed a third Class X felony. See 720 ILCS 5/33B-1(a) (West 1994) (providing that any person who is convicted of a Class X felony after having been twice convicted of a Class X felony "shall be adjudged an habitual criminal"); *id.*

§ 33B-1(e) ("anyone adjudged an habitual criminal shall be sentenced to life imprisonment"). Brown committed the first of the three necessary Class X felonies when he was 17 years old. In 1995, the law did not require that a defendant reach a particular age at the time of any of the three Class X felonies. In 2021, the legislature amended the Unified Code of Corrections (Code) so that a natural life sentence was only mandatory if the defendant's first Class X felony occurred when he or she was 21 years old or older. See Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a)(4)(E), (5)).

¶ 2        The issue in this appeal is whether the 2021 amendment to section 5-4.5-95(a) of the Code has an effect, either as a retroactive amendment to or a clarification of, the version of the statute that was in effect when Brown was sentenced. The appellate court answered in the affirmative, holding that the "2021 amendment to the habitual criminal provision must be regarded as a clarification and restoration of the original law, and that it applies retroactively." 2024 IL App (1st) 221859-U, ¶ 17. We disagree and hold that the 2021 amendment to section 5-4.5-95(a) neither applies retroactively to invalidate Brown's sentence nor does it clarify the law as it existed in 1995. Therefore, we reverse the judgment of the appellate court.

¶ 3                              I. BACKGROUND

¶ 4                            A. Prior Proceedings

¶ 5        Brown was born on April 21, 1962. Brown committed his first Class X felony, armed robbery, in January 1980 when he was 17 years old. Brown was convicted and sentenced to eight years' imprisonment in June 1980. Brown was paroled in February 1984. Brown committed his second Class X felony, another armed robbery, in July 1984 when he was 22 years old. Brown was convicted of the second armed robbery and sentenced to 12 years' imprisonment in July 1985. Brown was paroled in March 1993.

¶ 6        In September 1993, Brown, then 31 years old, committed the last of his Class X felonies. A jury found Brown guilty of, *inter alia*, aggravated criminal sexual assault and aggravated vehicular hijacking. The trial evidence established that Brown forced the victim into her car at gunpoint. Brown then drove the victim around, repeatedly sexually assaulting her, before tying the victim up and leaving

her in a wooded area in Indiana. At sentencing in 1995, the circuit court noted that the life sentence was mandatory but added that it was an "appropriate disposition" considering the facts of the case.

¶ 7 Between 1995 and 2021, Brown instituted numerous legal challenges to his convictions and sentence. On direct appeal in 1996, Brown challenged the sufficiency of the evidence. The appellate court affirmed Brown's convictions, finding the evidence "more than sufficient." *People v. Brown*, 284 Ill. App. 3d 1116 (1996) (table) (unpublished order under Illinois Supreme Court Rule 23). In 1998, Brown filed a postconviction petition, which was summarily dismissed as untimely.

¶ 8 Brown then unsuccessfully pursued a 2000 *habeas corpus* petition, a 2001 successive postconviction petition, and a 2003 motion for relief from judgment under section 2-1401(f) of the Code of Civil Procedure (735 ILCS 5/2-1401(f) (West 2002)). In 2011, Brown moved for DNA testing of samples collected in the rape kit. By agreement of the parties, in February 2012, the circuit court ordered the Illinois State Police to conduct a DNA comparison between the DNA collected as evidence and the reference sample of Brown. In November 2012, the State informed the circuit court that the testing established that the DNA collected from the victim was a match to Brown's DNA sample.

¶ 9                                B. Instant Proceedings

¶ 10 In July 2021, Brown filed the first of two motions, at issue here, for leave to file successive postconviction petitions. The petitions sought resentencing pursuant to the recently amended section 5-4.5-95(a) of the Code (730 ILCS 5/5-4.5-95(a) (West 2020)), which limited a mandatory natural life sentence to individuals whose first Class X felony occurred after they turned 21 years old. Brown argued that his first Class X felony was committed when he was 17. Therefore, according to Brown, it would not be a qualifying predicate Class X felony under the amended statute.

¶ 11 In December 2021, Brown filed a second motion for leave to file a successive postconviction petition. Brown argued that it would be cruel, degrading, and grossly disproportionate to deny him any chance of relief based, in part, on conduct that occurred when he was under the age of 18. Brown argued that the statutory

amendment rebutted any presumption that the law was intended to include juvenile convictions.

¶ 12    The Cook County circuit court denied Brown's motions. The court found that, based on *People v. Durant*, 2022 IL App (1st) 211190-U (*Durant I*), the 2021 statutory amendment only applied prospectively. In *Durant I*, the court found that the "[l]egislature changed the Habitual Criminal Statute and now requires that a defendant's first qualifying predicate offense be committed after he or she is 21 years old or older" but that the "[l]egislature did not make this change retroactive." *Id.* ¶ 10.[1] The circuit court also found no constitutional concern with the fact that Brown's first Class X felony, committed when he was 17 years old, was used as a predicate offense.

¶ 13                         C. The Appellate Court

¶ 14    The appellate court reversed, holding that Brown "was improperly sentenced to natural life as a habitual criminal, where one of the predicate convictions occurred when he was younger than 21 years old." 2024 IL App (1st) 221859-U, ¶ 18. The court relied on this court's decision in *People v. Stewart*, 2022 IL 126116, and its decision in *People v. Durant*, 2024 IL App (1st) 211190-B (*Durant II*). 2024 IL App (1st) 221859-U, ¶ 18. The court recognized that *Stewart* analyzed section 5-4.5-95(b) of the Code (730 ILCS 5/5-4.5-95(b) (West 2016)), while Brown's argument implicated section 5-4.5-95(a) (730 ILCS 5/5-4.5-95(a) (2020)). 2024 IL App (1st) 221859-U, ¶ 17. Nonetheless, the court reasoned that *Stewart* applied because each section was amended simultaneously and the legislature used the exact same language in each section. *Id.* ("it would be illogical to determine that the legislature did not act with the same intent when it added identical provisions at the same time in the same public act").

¶ 15    Citing *Durant II*, the court held that, "pursuant to *Stewart*, the 2021 amendment to the habitual criminal provision must be regarded as a clarification and restoration

---

[1]In a supervisory order, this court directed the appellate court to vacate its judgment in *Durant I* and consider whether a different result was warranted based on our decision in *People v. Stewart*, 2022 IL 126116. *People v. Durant*, No. 129184 (Ill. Mar. 29, 2023) (supervisory order). The appellate court reached its subsequent judgment in *People v. Durant*, 2024 IL App (1st) 211190-B (*Durant II*).

of the original law" as it existed in 1995 when Brown was sentenced. *Id.* (citing *Durant II*, 2024 IL App (1st) 211190-B, ¶ 38). The court concluded that Brown's "sentence violated the habitual criminal provision in section 5-4.5-95(a) of the Code and his constitutional due process rights." *Id.* ¶ 18.

¶ 16    This court allowed the State's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315(a) (eff. Dec. 7, 2023). We allowed the Center on Wrongful Convictions, Illinois Prison Project, Children and Family Justice Center, and Restore Justice Foundation to file an *amici curiae* brief in support of Brown's position. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 17                                II. ANALYSIS

¶ 18    We granted the State's petition for leave to appeal to decide whether the 2021 amendment to section 5-4.5-95(a) affected the version of the statute that Brown was sentenced under in 1995. The appellate court is divided on the issue. Compare *People v. Robinson*, 2025 IL App (1st) 240884, ¶ 84 ("Here, as *Durant* explained, the clarified text restores the statute to its intended scope: a habitual-criminal life sentence cannot rest on conduct occurring before the age of 21."), and *Durant II*, 2024 IL App (1st) 211190-B, ¶ 38 ("we hold that the 2021 amendment to the habitual criminal provision must be regarded as a clarification and restoration of the original law, such that it is not limited to prospective effect"), with *People v. Fuller*, 2025 IL App (4th) 231457, ¶ 41 ("Accordingly, we find that defendant is not entitled to retroactive application of the 2021 amendment to subsection (a)."), and *People v. Smallwood*, 2024 IL App (5th) 210407, ¶ 30 (holding that the 2021 amendment to section 5-4.5-95(a) did not apply retroactively to a defendant sentenced prior to the amendment's effective date). We agree with the latter line of cases and hold that the 2021 amendment to section 5-4.5-95(a) does not apply retroactively to, or clarify, the version of the statute Brown was sentenced under in 1995.[2]

---

[2]To warrant leave of court to file a successive postconviction petition, a petitioner must establish cause and prejudice. 725 ILCS 5/122-1 (West 2022). Where, as here, a petitioner's claim fails as a matter of law, the petitioner has failed to establish prejudice. See *People v. Clark*, 2023 IL 127273, ¶ 83 ("defendant's proposed successive

¶ 19                                    A. Standard of Review

¶ 20        We review *de novo* the issue of whether the circuit court correctly denied Brown's motions for leave to file a successive postconviction petition. *People v. Robinson*, 2020 IL 123849, ¶ 39. The substantive issue, whether a statutory amendment applies retroactively or clarifies existing law, is also an issue we review *de novo*. *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 27. The substantive issue requires this court to interpret statutes and discern the legislature's intent. We review issues of statutory interpretation *de novo*. *Doe v. Burke Wise Morrissey & Kaveny, LLC*, 2023 IL 129097, ¶ 20.

¶ 21                          B. Brown's Claim Is Cognizable Under the
                                     Post-Conviction Hearing Act

¶ 22        The State raises a threshold argument that Brown's claim is not cognizable under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). The Act is limited in scope to claims of "a substantial denial" of a petitioner's "rights under the Constitution of the United States or of the State of Illinois or both." *Id.* § 122-1(a)(1). This court has held that the circuit court's "jurisdiction in post-conviction proceedings is properly limited to situations in which 'a substantial denial of rights under the Constitution of the United States or the State of Illinois' is alleged." *People v. Ward*, 48 Ill. 2d 117, 120 (1971) (quoting *People v. Owens*, 34 Ill. 2d 149, 150 (1966)).

¶ 23        Brown's claim is that the 2021 amendment to section 5-4.5-95(a) clarified the original meaning of the statute and that "the legislature always intended the habitual criminal statute to prohibit life sentences for those whose prior offenses were committed before the age of 21." In his petition, Brown claimed that the 2021 amendment "rebut[ted] any presumption that the law was intended to take into consideration prior juvenile convictions." If Brown's claim is accepted, then the circuit court violated his constitutional right to due process by sentencing him to a term in excess of the term permitted by Illinois law.

---

postconviction petition fails to satisfy the prejudice prong *** , and the circuit court properly denied leave to file it, as it fails as a matter of law").

¶ 24    In *Stewart*, this court held: "If defendant is correct that he was statutorily ineligible for a Class X sentence, this would amount to plain error under the second prong of our plain error analysis because it affects defendant's substantial rights." *Stewart*, 2022 IL 126116, ¶ 12. "This court has equated second prong plain error with structural error, which is the type of error that erode[s] the integrity of the judicial process and undermine[s] the fairness of the defendant's trial." (Internal quotation marks omitted.) *People v. Johnson*, 2024 IL 130191, ¶ 55; see *Whalen v. United States*, 445 U.S. 684, 689 n.4 (1980) ("The Due Process Clause of the Fourteenth Amendment, however, would presumably prohibit state courts from depriving persons of liberty or property as punishment for criminal conduct except to the extent authorized by state law."). Based on this precedent, Brown's claim, that he was sentenced to a statutorily unauthorized term of life imprisonment, is cognizable under the Act.

¶ 25                    C. The 2021 Amendment Is Neither Retroactive
                                   nor a Clarification

¶ 26    The 2021 amendment to section 5-4.5-95(a) does not affect Brown's 1995 sentence for two primary reasons. First, based on this court's precedent, the 2021 amendment to section 5-4.5-95(a) does not apply retroactively to invalidate Brown's sentence. Second, the holding in *Stewart*, which found the simultaneous amendment to section 5-4.5-95(b) to be a legislative clarification of existing law, is not applicable here because there are critical differences between the statutory histories of section 5-4.5-95(a) and section 5-4.5-95(b).

¶ 27                        1. Evolution of Habitual Criminal Statutes

¶ 28    When Brown was sentenced, section 33B-1 of the Criminal Code of 1961 provided that an individual was a habitual criminal if the individual was convicted of a third Class X felony. 720 ILCS 5/33B-1 (West 1994). There was no requirement that a defendant reach a particular age at the time of the commission of any of the Class X felonies.

¶ 29    The only requirements were that

"(1) the third offense was committed after the effective date of this Act;

(2) the third offense was committed within 20 years of the date that judgment was entered on the first conviction, provided, however, that time spent in custody shall not be counted;

(3) the third offense was committed after conviction on the second offense; [and]

(4) the second offense was committed after conviction on the first offense." *Id.* § 33B-1(d)(1)-(4).

If each of these requirements were met, the circuit court was required to issue a sentence of life imprisonment. *Id.* § 33B-1(e) ("anyone adjudged an habitual criminal shall be sentenced to life imprisonment").

¶ 30   In 2008, section 33B-1 was recodified as section 5-4.5-95(a). See Pub. Act 95-1052, § 93 (eff. July 1, 2009) (amending the Criminal Code of 1961 by repealing all of article 33B); *id.* § 5 (amending the Unified Code of Corrections by adding article 4.5 to chapter V). Section 5-4.5-95(a), as recodified, remained substantively unchanged and continued to not contain any age requirement as to any of the three Class X felonies. See 730 ILCS 5/5-4.5-95(a) (West 2008).

¶ 31   In 2016, section 5-4.5-95(a) was amended to include an age requirement for the first time. See Pub. Act 99-69, § 10 (eff. Jan. 1, 2016). The amended statute provided that a habitual criminal designation and mandatory life sentence were only appropriate for those "having attained the age of 18 at the time of the third offense." 730 ILCS 5/5-4.5-95(a)(5) (West 2016). In 2021, section 5-4.5-95(a) was amended a second time (see Pub. Act 101-652, § 10-281 (eff. July 1, 2021)) to provide that the habitual criminal designation and mandatory life sentence did not apply unless "[t]he first offense was committed when the person was 21 years of age or older" (730 ILCS 5/5-4.5-95(a)(4)(E) (West 2022)).

¶ 32                    2. Retroactive Versus Clarification

¶ 33   The parties and the reviewing courts at times interchangeably use the terms retroactive and clarification to describe the potential effect of the 2021 amendment

to section 5-4.5-95(a) on the version of the statute Brown was sentenced under. See, *e.g.*, 2024 IL App (1st) 221859-U, ¶ 17 (holding that the amendment "must be regarded as a clarification," while also stating that the amendment "applies retroactively"); *Fuller*, 2025 IL App (4th) 231457, ¶ 25 (summarizing our holding in *Stewart* as that "the 2021 amendment of subsection (b) was a clarification that had retroactive effect").

¶ 34       There are key distinctions between retroactive amendments and legislative clarifications because our analysis proceeds in a different manner depending on which is at issue. For clarity, we will discuss both and explain why neither is implicated in Brown's case.

¶ 35       An amendment is retroactive if it " 'attaches new legal consequences to events completed before its enactment.' " *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 39 (2001) (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994)). An amendment is prospective if it is "applicable only to cases which shall arise after its enactment." Black's Law Dictionary 1222 (6th ed. 1990). When retroactivity is at issue, the question is which law applies: (1) the law in effect at the time of the events at issue or (2) the law as amended after the time of the events at issue.

¶ 36       When clarification is at issue, no one disputes which law applies to the case. Instead, the question is what the applicable law means. When the applicable law is ambiguous, "[a] subsequent amendment to a statute may be an appropriate source for discerning legislative intent." *In re Detention of Lieberman*, 201 Ill. 2d 300, 320-21 (2002). In other words, the legislature may amend a statute without intending to change the meaning of the original statute. We have reasoned that, where there are "differing views in the appellate court, there [i]s no clear interpretation of the law to be changed." *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 300 (2010). Under those circumstances, we treat the amendment as a "clarification of the prior statute," which "must be accepted as a legislative declaration of the meaning of the original Act." *Id.* at 301.

¶ 37       With that explanation of the distinctions between the legal concepts of retroactivity and clarification, we proceed to analyze the potential effect of the 2021 amendment to section 5-4.5-95(a) on the version of the habitual criminal statute

Brown was sentenced under in 1995.

¶ 38                        3. Our Precedent Mandates a Prospective Application

¶ 39        Our jurisprudence on retroactivity proceeds in two steps. First, we "ask whether the legislature has clearly indicated the statute's temporal reach." *People v. Hunter*, 2017 IL 121306, ¶ 20. "If so, and assuming no constitutional prohibition, the legislature's intent will be given effect." *Id.* Second, if the legislature did not provide for the temporal reach in the amendment itself, this court turns to section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2024)). See *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 41 ("[I]f the temporal reach has not been clearly indicated within the text of the new law, then the legislature's intent as to temporal reach is provided by default in section 4.").

¶ 40        "[S]ection 4 is a clear legislative directive as to the temporal reach of statutory amendments and repeals when none is otherwise specified: those that are procedural may be applied retroactively, while those that are substantive may not." *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 406 (2009). Procedural amendments are those that prescribe the method of enforcing rights, and substantive amendments are those that establish the rights themselves. See *People v. Atkins*, 217 Ill. 2d 66, 71-72 (2005). There is a presumption in Illinois law that a statutory amendment will only have a prospective application. See *People v. Capo*, 393 Ill. 342, 344 (1946).

¶ 41        In the instant case, both steps establish that the 2021 amendment to section 5-4.5-95(a) applies prospectively only. First, the amendment was contained in Public Act 101-652, which was passed on February 22, 2021, but contained an effective date of July 1, 2021. The legislature's utilization of a delayed implementation date establishes the legislature's intent that the amendment apply prospectively. See *People v. Brown*, 2024 IL 129585, ¶ 37 ("We find the legislature clearly stated its intent that the amendment apply prospectively when it expressly delayed the amendment's implementation date in the text of the legislation."); *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 23 ("a statute that has an express delayed implementation date but is otherwise silent as to temporal reach will be applied prospectively").

¶ 42    Second, even if the amendment did not contain a clear intention of prospective only application, section 4 of the Statute on Statutes would mandate the same result. Section 4 provides that, "[i]f any *** punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect." 5 ILCS 70/4 (West 2024). This court has consistently held that a defendant is not entitled to resentencing under an amendment that provides for a mitigated punishment. See *People v. Bradford*, 106 Ill. 2d 492, 504 (1985) (holding that, where the defendant "was sentenced prior to the effective date of [the amendment]," he was "not eligible to elect to be sentenced under it"); *Hunter*, 2017 IL 121306, ¶ 56 (holding that, where a statutory amendment "mitigates punishment because the potential sentence is 'less severe' than under the prior sentencing scheme," the defendants were not entitled to resentencing under the amendment because they had been sentenced prior to the amendment's effective date). Based on this precedent, the 2021 amendment to section 5-4.5-95(a) does not apply retroactively to the version of the statute Brown was sentenced under in 1995.

¶ 43                    4. The 2021 Amendment to Section 5-4.5-95(a) Was
                                  Not a Clarification

¶ 44    Brown argues that the 2021 amendment of section 5-4.5-95(a) is not governed by the retroactivity jurisprudence just discussed. Instead, Brown claims, the analysis in this case is governed by our recent decision in *Stewart*, 2022 IL 126116. Based on *Stewart*, Brown argues that the 2021 amendment was a clarification of what the law was in 1995 when he was sentenced. We disagree.

¶ 45    In *Stewart*, this court was tasked with interpreting the meaning of the version of section 5-4.5-95(b) in effect when Stewart was sentenced in 2017. *Id.* ¶ 11. When Stewart was sentenced, section 5-4.5-95(b) provided:

"When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony ***, that defendant shall be sentenced as a Class X offender." 730 ILCS 5/5-4.5-95(b) (West 2016).

Stewart committed the first predicate felony, the Class 1 felony of residential burglary, when he was 17 years old. *Stewart*, 2022 IL 126116, ¶¶ 4, 7.

¶ 46    We first noted the principle of statutory interpretation that, where "statutory language is clear and unambiguous, it should be applied without resort to additional aids of statutory construction." *Id*. ¶ 13. However, when a statute is ambiguous, which we defined as "capable of being understood by reasonably well-informed persons in two or more different ways," "a reviewing court may consider extrinsic aids of construction to discern the legislative intent." *Id*. Division in the appellate court districts had arisen over "whether the legislature intended a prior felony conviction to be a qualifying offense for Class X sentencing if the same offense would have resulted in a juvenile adjudication had it been committed on the date of the present offense." *Id*. ¶¶ 16-17 ("The statute's silence on this question has resulted in a split in our appellate court.").

¶ 47    The division in the appellate court did not arise because of the language in section 5-4.5-95(b) itself. Instead, the division arose from the "legislature's 2016 amendment to section 5-130 of the Juvenile Court Act, which had the effect of vesting the juvenile court with exclusive jurisdiction over minors who are charged with armed robbery or aggravated vehicular hijacking—two crimes that had, prior to the amendment, disqualified minors from juvenile jurisdiction." *People v. Miles*, 2020 IL App (1st) 180736, ¶ 21. The *Miles* court concluded that, had Miles "committed his 2005 offense under the laws in effect on June 9, 2016, the juvenile court would have had exclusive jurisdiction" and the "offense would have led to a juvenile adjudication rather than a Class 2 felony conviction." *Id*. ¶ 22. In short, reading section 5-4.5-95(b) and the amendments to the Juvenile Court Act of 1987 (Juvenile Court Act) (see Pub. Act 98-61 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120, 5-130)) together, an offense that would have resulted in a juvenile adjudication instead of a Class 2 felony conviction could not serve as a predicate under the version of section 5-4.5-95(b) in effect when Miles was sentenced.

¶ 48    This court recognized the *Miles* court's interpretation of section 5-4.5-95(b) and contrasted it with the Fourth District's decision in *People v. Reed*, 2020 IL App (4th) 180533, where the court held that "a prior conviction of a 17-year-old defendant in adult court could serve as a qualifying offense for Class X sentencing

because the plain language of the statute did not require a court to consider the defendant's age at the time of the prior offense." *Stewart*, 2022 IL 126116, ¶ 21.

¶ 49　　In 2021, Public Act 101-652 amended section 5-4.5-95(b) to provide that the first qualifying offense for Class X sentencing must have been " 'committed when the person was 21 years of age or older.' " *Id.* ¶ 19 (quoting Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(b)(4))). This court held that the amendment of section 5-4.5-95(b) "was intended to resolve the conflict in the appellate court and clarify the meaning" of the pre-2021 version of section 5-4.5-95(b). *Id.* ¶ 22. This court gave two rationales for this holding: (1) "the split in the appellate court" and (2) "the silence in the previous version of the statute on this issue." *Id.*

¶ 50　　This court's holding in *Stewart* that Public Act 101-652 clarified the meaning of section 5-4.5-95(b) does not apply to section 5-4.5-95(a) for three reasons.

¶ 51　　First, neither of the two rationales present in *Stewart* are present in this case. There was not, and has never been, a division in the appellate court over the meaning of section 5-4.5-95(a) or its predecessor. See *People v. Bryant*, 278 Ill. App. 3d 578, 586 (1996) ("The Act unambiguously states that '[a]ny convictions' may be used as a former conviction under the habitual criminal statute. 720 ILCS 5/33B-1(c) (West 1992). This includes convictions obtained while a defendant was a juvenile."); *People v. Banks*, 212 Ill. App. 3d 105, 107 (1991) (same).

¶ 52　　Also, the split in authority on using juvenile convictions as predicate offenses under section 5-4.5-95(b) arose based on amendments to the Juvenile Court Act. See *Miles*, 2020 IL App (1st) 180736, ¶ 21 (explaining that a 2016 amendment to the Juvenile Court Act "provide[d] some indication—absent at the time *Banks* and *Bryant* were decided—that the legislature intended that minors who commit armed robbery or aggravated vehicular hijacking should be treated differently than adults charged with those crimes"). The amendments to the Juvenile Court Act did not create similar uncertainty in section 5-4.5-95(a) because the version of section 5-4.5-95(a) in effect in 2016 contained a definitive age requirement.

¶ 53　　Additionally, there was also no silence on the issue in the version of section 5-4.5-95(a) amended in Public Act 101-652. The prior version of section 5-4.5-95(a) specified that the only age requirement was that the defendant must have "attained

the age of 18 at the time of the third offense." 730 ILCS 5/5-4.5-95(a)(5) (West 2016). "Where a defendant need only be 18 years of age by the third offense, it logically follows that a defendant could be younger than 18 years of age for the first and second qualifying offenses and still be sentenced to natural life imprisonment under the habitual criminal sentencing statute." *Smallwood*, 2024 IL App (5th) 210407, ¶ 27. By adding the explicit age requirement, the 2016 amendment removed any potential silence as to whether juvenile convictions counted as predicates under section 5-4.5-95(a). See *People v. Reed*, 2025 IL App (1st) 232116, ¶ 52 ("any potential ambiguity in earlier versions of the statute was clearly resolved by the 2016 amendment").

¶ 54     Second, it is axiomatic that, for an amendment to be considered a clarification, the amendment must be " 'consistent with a reasonable interpretation of the prior enactment and its legislative history.' " *K. Miller Construction Co.*, 238 Ill. 2d at 299 (quoting *Middleton v. City of Chicago*, 578 F.3d 655, 664 (7th Cir. 2009)). To "clarify" something means "to make understandable" or "to free of confusion." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/clarify (last visited Jan. 7, 2026) [https://perma.cc/RD44-UL35]. This court has treated an amendment as a clarification when the amendment "more accurately" conveyed the original legislative intent. See *People v. O'Donnell*, 116 Ill. 2d 517, 525 (1987). Similarly, we have found a clarification where the amendment "provided a fuller description" of the class of individuals covered by a statute. See *People v. Parker*, 123 Ill. 2d 204, 212 (1988).

¶ 55     On the other hand, we have never found a clarification where an amendment was substantively incompatible with the preamendment version of the statute. See *People v. McChriston*, 2014 IL 115310, ¶¶ 19-22 (holding that a statutory amendment was not a clarification where the amendment and original statute provided for different duties on the part of the sentencing judge). That is the case here. The 2021 amendment to section 5-4.5-95(a) required that a defendant be 21 years old or older at the time of the first qualifying offense to be eligible for a natural life sentence. See 730 ILCS 5/5-4.5-95(a)(5) (West 2020). The preamendment version of section 5-4.5-95(a) required only that a defendant be 18 years old or older at the time of the third qualifying offense. See 730 ILCS 5/5-4.5-95(a)(5) (West 2016). These two versions of section 5-4.5-95(a) are incompatible and inconsistent with one another. Therefore, the legislature, in Public Act 101-

652, could not have been clarifying the meaning of the prior version of section 5-4.5-95(a).

¶ 56    Third, it is also axiomatic that the legislature can only clarify the version of the statute in effect at the time of the clarifying amendment. See *In re Marriage of Kozloff*, 101 Ill. 2d 526, 533 (1984) (holding that a statutory amendment was "intended to clarify existing law"); *People ex rel. Ryan v. Agpro, Inc.*, 214 Ill. 2d 222, 230 (2005) (rejecting the State's argument that a recent amendment was a clarification of "existing law"). Here, the legislature in 2021 could only have been clarifying the 2016 version of the statute. In other words, the 2021 amendment could not have been clarifying the version of the statute in effect in 1995 because that version had ceased to exist after the 2016 amendment. See *Fuller*, 2025 IL App (4th) 231457, ¶ 40 ("the legislature cannot have been 'clarifying' the 2010 version of the law, as it had ceased to exist five years prior to the 2021 amendment; it was no longer there to be clarified").

¶ 57    Finally, we reject Brown's argument, quoting *Durant II*, that "it would be incongruous and defy common sense to find the legislature did not act with similar intent when it added identical provisions at the very same time in the same public act." See *Durant II*, 2024 IL App (1st) 211190-B, ¶ 32. To be sure, the legislature undoubtedly meant the identical provisions to have the same meaning going forward. See *People v. Ashley*, 2020 IL 123989, ¶ 36 (explaining that, "where a word is used in different sections of the same statute, the presumption is that the word is used with the same meaning"). But the simplicity of this rationale, while it has some intuitive appeal, disregards a key principle.

¶ 58    In determining whether an amendment is a clarification, the substance of the law existing at the time of the amendment is as important to the analysis as the substance of the amendment itself. Brown's position puts all the emphasis on the amendment and fails to adequately consider the substance of section 5-4.5-95(a) before the amendment. See *Smallwood*, 2024 IL App (5th) 210407, ¶ 29 (declining to ignore the "unambiguous plain language of section 5-4.5-95(a) *** before Public Act 101-652 was enacted"). In short, while Public Act 101-652 clarified section 5-4.5-95(b), because both the amendment and the existing law were consistent, Public Act 101-652 did not clarify section 5-4.5-95(a), because the amendment and the

existing law are inconsistent. See *McChriston*, 2014 IL 115310, ¶¶ 19-22.

¶ 59                                  III. CONCLUSION

¶ 60        In sum, we reverse the appellate court's judgment and hold that the 2021 amendment to section 5-4.5-95(a) is neither retroactive to the version of the habitual criminal statute Brown was sentenced under nor a clarification of the law.[3] Therefore, the circuit court properly denied Brown's motions for leave to file a successive postconviction petition.

¶ 61        Appellate court judgment reversed.

¶ 62        Circuit court judgment affirmed.

¶ 63        JUSTICE OVERSTREET, specially concurring:

¶ 64        I agree with the majority's holding that the 2021 amendment to section 5-4.5-95(a) of the Unified Code of Corrections (Code) (see Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(a))) does not apply to defendant's 1995 sentence, as the amendment was neither retroactive nor a clarification of the law as it existed in 1995. Thus, I agree that the circuit court properly denied defendant's motion for leave to file a successive postconviction petition and the appellate court judgment must be reversed. However, I write separately because, given this court's holding that defendant's sentence is lawful, this court should abstain from its consideration of whether, if it were unlawful, defendant would be entitled to postconviction relief based on a violation of his due process rights. See *supra* ¶¶ 21-24. Because it is unnecessary to the disposition of this appeal, I would exercise judicial restraint and decline to address the issue.

¶ 65        "It is a fundamental rule of judicial restraint that a court not reach *constitutional* questions in advance of the necessity of deciding them." (Emphasis in original.)

---

[3]We overrule the decisions in *People v. O'Neal*, 2023 IL App (4th) 170682-UB, *Durant II*, 2024 IL App (1st) 211190-B, and *Robinson*, 2025 IL App (1st) 240884, to the extent they are inconsistent with this holding.

*People v. White*, 2011 IL 109689, ¶ 148 (citing *Northwest Austin Municipal Utility District No. One v. Holder*, 557 U.S. 193, 197 (2009), and *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C.*, 467 U.S. 138, 157-58 (1984)). Here, the circuit court had before it a motion for leave to file a successive postconviction petition. Thus, the threshold determination for the circuit court was whether defendant waived the issue raised therein. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002) (the absence of waiver is an express requirement of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 1992)) to file a successive petition). This court has held that the cause and prejudice test is the analytical tool that is to be used to determine whether fundamental fairness requires waiver to be overlooked such that a claim brought in a successive postconviction petition should be considered on the merits. *Id.* at 459. Thus, if defendant cannot establish cause and prejudice, it is unnecessary for this court to determine whether the claim rises to the level of a violation of substantial constitutional rights that is "cognizable" under the Act, and judicial restraint requires that this court abstain from reaching this issue.

¶ 66    As the majority opinion notes, the applicability of the 2021 amendment to section 5-4.5-95(a) of the Code (730 ILCS 5/4.5-95(a) (West 2020)) to defendant's 1995 sentence is the issue on which we allowed the State's petition for leave to appeal. The majority opinion holds, and I agree, that the amendment does not apply and does not invalidate defendant's sentence, and thus he has failed to establish prejudice as required to file a successive postconviction petition. *Supra* ¶ 18 n.2 (citing *People v. Clark*, 2023 IL 127273, ¶ 83). This conclusion alone requires the reversal of the appellate court's decision and reinstatement of the circuit court's order denying defendant's motion for leave. Thus, this is the only holding necessary to the disposition of this appeal. See *White*, 2011 IL 109689, ¶ 148.

¶ 67    Despite the foregoing, prior to addressing the determinative issue of whether defendant's claim has merit, the majority opinion addresses what it characterizes as the State's "threshold argument" that defendant's claim is not "cognizable" under the Act. *Supra* ¶ 22. The majority opinion then assumes the claim has merit for the purpose of addressing whether it qualifies as a claim for a violation of a substantial constitutional right for which the Act provides relief. *Supra* ¶ 23. I disagree that this is a threshold issue that must be determined, because, as previously discussed, the threshold issue to be determined with respect to a motion for leave to file a

successive postconviction petition is the application of the waiver doctrine via the cause and prejudice test. The circuit court had before it a motion for leave to file the successive petition and had the authority to rule on that motion. The exercise of judicial restraint requires this court to decline ruling on the issue of whether a sentence that exceeds that allowed by law is a due process violation, as that is an issue of constitutional law that is not required for the disposition of this case. See *supra* ¶ 23.

¶ 68        Having declined to exercise the required judicial restraint, the majority opinion makes a pronouncement of constitutional law for which there is no direct precedent and that has never before been addressed by Illinois courts, holding for the first time that a statutorily unauthorized sentence constitutes a due process violation. *Supra* ¶ 24. Having found defendant's sentence statutorily authorized and thus that defendant cannot show the prejudice required for him to be permitted leave to file a successive petition, I would decline to address this constitutional issue of first impression, which was omitted from the State's petition for leave to appeal.

¶ 69        For these reasons, I would reverse the appellate decision and reinstate the decision of the circuit court because defendant's sentence was not impacted by the 2021 amendment and, thus, his motion for leave to file a successive postconviction petition was properly denied due to lack of a prejudice showing. As such, I would decline to reach the issue of whether defendant's sentencing claim, had it been meritorious, rises to the level of a substantial violation of defendant's constitutional rights. Respectfully, I specially concur.

¶ 70        JUSTICE O'BRIEN joins in this special concurrence.